**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MAREK as an individual, on behalf of herself, the general public and those similarly situated, | CASE NO. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DE-CEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT |
| v. | |
| MOLSON COORS BEVERAGE COMPANY; MOLSON COORS BEVERAGE COMPANY USA LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

**INTRODUCTION**

1.      Plaintiff Jennifer Marek, by and through her counsel, brings this class action against Molson Coors Beverage Company and Molson Coors Beverage Company USA LLC (collectively, "Defendant" or "Molson Coors") to seek redress for Defendant's deceptive and unlawful practices in labeling and marketing its Vizzy Hard Seltzer.

2.      Consumers are increasingly interested in getting health benefits from their food and drink. Consumers are attracted to "better for you" products that are healthier than other alternatives in food and beverage categories that are not typically healthy (or even unhealthy). To make healthy choices, consumers rely on food and drink product labels.

3.      Intending to profit from consumers' increasing desire to consumer healthy food and drink, Defendant fortified its alcoholic beverage by sprinkling nutrients into a beverage that is lawfully required to disclose harmful health effects. 27 U.S.C. § 215. Of course, adding an insignificant amount of nutrients to an alcoholic beverage will do little to overcome the harmful effects of alcohol.

4.      But Defendant did just this. It fortified its Vizzy products with an insignificant amount of Vitamin C, and then blanketed the labels and advertising with statements affirmatively promoting antioxidant Vitamin C from a "superfruit." Defendant's campaign is both misleading and dangerous to consumers. It is also unlawful, as Defendant's labels ignore FDA and Congressional policies acknowledging such danger.

5.      Accordingly, Defendant's manufacture, labeling, and advertising of the Products as containing "Antioxidant Vitamin C from Acerola Superfruit" and the other representations detailed herein are unlawful, misleading, and designed to deceive consumers into purchasing Defendant's Products. Plaintiff brings this action to stop Defendant's misleading practices.

**PARTIES**

6.      Jennifer Marek ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Menlo Park, California.

7.      Defendant Molson Coors Beverage Company is a corporation existing under the laws of the State of Delaware, having its principal place of business in Chicago, Illinois.

8.      Defendant Molson Coors Beverage Company USA LLC is a limited liability company existing under the laws of the State of Delaware, having its principal place of business in Chicago, Illinois.

### JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and at least one Defendant are citizens of different states.

10.     The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

12.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Vizzy Hard Seltzer at a Target in Redwood City, California. (Plaintiff 's declaration is attached hereto as Exhibit A.)

13.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

### SUBSTANTIVE ALLEGATIONS

**Defendant's Products**

14.     Defendant manufactures, distributes, markets, advertises, and sells a variety of hard seltzers under the brand name "Vizzy."

15.     Hard seltzers are carbonated, alcoholic beverages, mainly derived from either a brewed sugar base or brewed malt base. They are often purchased and consumed because they are low calorie, low sugar, inexpensive alcoholic drinks.

16.     Vizzy products predominately, uniformly, and consistently state on the principal display panel of the product labels that the products are made "with Antioxidant Vitamin C from acerola superfruit." Vizzy hard seltzers come in a variety of flavors, including Blackberry Lemon, Watermelon Strawberry, Papaya Passionfruit, Raspberry Tangerine, Blueberry Pomegranate, Strawberry Kiwi, Black Cherry Lime, Pineapple Mango, Raspberry Lemonade, Strawberry Lemonade, Peach Lemonade, and Watermelon Lemonade. These products, and any other Vizzy Hard Seltzer products that make a claim regarding antioxidant Vitamin C, will hereinafter be referred to as "Products."

17.     The representation that the Products contain and provide antioxidant vitamin C from acerola superfruit was uniformly communicated to Plaintiff and every other person who purchased any of the Products in California and the United States. The same or substantially similar product label has appeared on each respective product during the entirety of the Class Period in the general form of the following example:

 

18.     The Products' website repeats the claims with statements such as: "Another hard

**ANOTHER**
**HARD SELTZER?**

**YEAH, BUT WE'VE GOT**
**ANTIOXIDANT**
**VITAMIN C**

GET VIZZY

seltzer? Yeah, but we've got antioxidant vitamin C."

19. Other advertisements brag that Vizzy is the "First hard seltzer made with antioxi-dant vitamin C from acerola superfruit." Television adds also boast, "Given the choice, why wouldn't you choose the one with antioxidants and vitamin C?"



20. In recent years, consumer demand for hard seltzers has exploded. In 2018, hard seltzer sales were a mere $210 million and in 2019, sales sky rocketed to $1.2 billion with no signs of slowing.

21. In order to distinguish itself in the bullish market of hard seltzers, Defendant has fortified its product to distract from the severe harm that may occur from alcohol consumption. Seeking to cash in on the hard seltzer craze, Defendant has violated FDA policies and regulations and for the reasons described herein, its labels are misleading and deceptive.

**Defendant's Products Are Harmful**

22. Federal regulations require that Defendant's Products bear the following warning: "GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and **may cause health problems**." 27 U.S.C. § 215 (emphasis added).

23.     In enacting this requirement, Congress found that "the American public should be informed about the health hazards that may result from the consumption or abuse of alcoholic beverages."[1]

24.     The nutrient content of alcoholic beverages is usually negligible. Because they provide almost no nutrients, alcoholic beverages are considered "empty calories."[2]

25.     Over the long-term, consuming excess alcohol can also impair the body's ability to digest and utilize nutrients.[3]

26.     The United States Department of Agriculture's 2020-2025 Dietary Guidelines for Americans (DGA) encourage "[a]dults who choose to drink . . . to limit daily intakes . . . so as not to exceed daily calorie limits," and cautions that, in general, "drinking less is better for health than drinking more."[4]

27.     Evidence indicates that, among those who drink, higher average alcohol consumption is associated with an increased risk of death from all causes compared with lower average alcohol consumption. Emerging evidence suggests that even drinking within the recommended limits may increase the overall risk of death from various causes, such as from several types of cancer and some forms of cardiovascular disease.[5]

28.     According to the CDC, "Excessive alcohol use is responsible for more than 95,000 deaths in the United States each year, or 261 deaths per day. These deaths shorten the lives of those who die by an average of almost 29 years, for a total of 2.8 million years of potential life

---

[1] ANTI-DRUG ABUSE ACT OF 1988, 1988 Enacted H.R. 5210, 100 Enacted H.R. 5210, 102 Stat. 4181, 4518, 100 P.L. 690, 1988 Enacted H.R. 5210, 100 Enacted H.R. 5210

[2] Lieber CS. Relationships Between Nutrition, Alcohol Use, and Liver Disease, Relationships Between Nutrition, Alcohol Use, and Liver Disease. National Institutes of Health. 2004. https://pubs.niaaa.nih.gov/publications/arh27-3/220-231.htm

[3] Lieber CS. Alcohol: its metabolism and interaction with nutrients. *Annu Rev Nutr.* 2000;20:395-430.

[4] U.S. Department of Agriculture and U.S. Department of Health and Human Services. Dietary Guidelines for Americans 2020-2025. 2020. p49. https://www.dietaryguidelines.gov/sites/default/files/2020-12/Dietary_Guidelines_for_Americans_2020-2025.pdf

[5] Id.

lost. It is a leading cause of preventable death in the United States, and cost the nation $249 billion in 2010."[6]

29.     Worse, "[m]ore than half of alcohol-attributable deaths are due to health effects from drinking too much over time, such as various types of cancer, liver disease, and heart disease."[7]

**Defendant's Products Do Not Provide Health Benefits**

30.     Attempting to overcome the deleterious health impact of its Products, Defendant added Vitamin C to its Products and includes "with Antioxidant Vitamin C from Acerola Superfruit" on the label and in advertisements. However, Defendant's addition of vitamin C to the Products provides only 20% of the Food and Drug Administration's ("FDA") Recommended Daily Intake ("RDI") of vitamin C per 12 ounce can. See 21 C.F.R. § 101.9(c)(8). Current scientific research, however, does not indicate that vitamin C provides significant health benefits at this level.

31.     Scientific research suggests that isolated antioxidants, such as the vitamin C added to Defendant's Products, do not provide the same health benefits as antioxidants from a diet rich in fruits and vegetables. Clinical trials indicate that individual antioxidants taken alone do not appear to have preventative effects.[8]

32.   In this regard, the United States Department of Agriculture notes that

> [a]n underlying premise of the Dietary Guidelines is that nutritional needs should be met primarily from foods and beverages— specifically, nutrient-dense foods and beverages. … Nutrient-dense foods and beverages provide vitamins, minerals, and other health-promoting components…[9]

---

[6] Centers for Disease Control and Prevention, Alcohol and Public Health, https://www.cdc.gov/alcohol/features/excessive-alcohol-deaths.html (last accessed June 15, 2021).
[7] Id.
[8] *See* National Institutes of Health, Office of Dietary Supplements, Vitamin C Fact Sheet for Consumers, available at https://ods.od.nih.gov/factsheets/list-all/#VitaminC.
[9] United States Department of Agriculture, Dietary Guidelines for Americans, 2020-2025, Executive Summary, pgs. ix-x (available at https://www.dietaryguidelines.gov/).

33.     Moreover, consumers simply seeking to meet the RDI for vitamin C are also un-likely to experience health benefits from Vizzy Hard Seltzer Products. The National Institutes of Health confirms that vitamin C deficiency is rare, and the average American likely exceeds the RDI for vitamin C.[10] Because vitamin C is water soluble, the body does not store excess vitamin C that a human consumes, meaning the excess vitamin C will likely pass through the body.

34.     Even worse, alcohol consumption interferes with nutrient absorption, and even where a body absorbs nutrients, alcohol prevents the body from using nutrients by altering the transport, metabolism, and storage of nutrients.[11]

35.     Further, Defendant's use of the term "superfruit" on the Product labels further im-plies that the Products are healthy. The term "superfruit" has become an industry term to denote nutrient-dense fruits, synonymous with "healthy" and "nutritious."  However, little evidence sup-ports the claim that a dusting of powder provides benefits associated with consumption of a fresh "superfruit."

36.     In summary, Defendant's representations "with Vitamin C Antioxidant from Ac-erola Superfruit" mislead reasonable consumers into believing that the antioxidant content of the Products provides health benefits. The minimal amount of vitamin C in the Products will not pro-vide consumers with the health benefits that Defendant's representations lead them to expect, and even worse, the Product is actually dangerous to consumers' health.

37.     Defendant's use of the term "Antioxidant" and the other representations and im-ages detailed herein in the marketing, labeling, and advertising of the Products is thus nothing more than a marketing gimmick intended to deceive consumers into purchasing the Products. Ac-cordingly, Defendant's representations concerning the nutritional qualities, health qualities, and ingredients of the Products are misleading, deceptive, and unlawful.

---

[10] National Institutes of Health, Office of Dietary Supplements, Vitamin C Fact Sheet for Con-sumers, available at https://ods.od.nih.gov/factsheets/VitaminC-Consumer/ (accessed June 11, 2021).

[11] Lieber, Charles S. "Alcohol and nutrition; an overview." Alcohol Health & Research World, vol. 13, no. 3, 1989, p. 197+. *Gale Academic OneFile*, link.gale.com/apps/doc/A8191860/AONE?u=anon~4ce0ada0&sid=googleScholar&xid=296d4991. Accessed 14 July 2021.

**Federal and State Regulations**

38.     The Federal Food, Drug, and Cosmetics Act (the "FDCA"), 21 U.S.C. § 343(a), provides that a food is misbranded if "its labeling is false or misleading in any particular."

39.     The FDA has provided guidance that fortification of certain products, including carbonated beverages, is not appropriate. 21 C.F.R. § 104.20 (the "Fortification Policy").[12] The Fortification Policy states that "The random fortification of foods . . . could result in deceptive and misleading claims."

40.     Specifically, under the Fortification Policy, the FDA "does not encourage indis-criminate addition of nutrients to foods, nor does it consider it appropriate to fortify … snack foods such as … carbonated beverages." *See* 21 C.F.R. § 104.20(a).

41.     In a 2015 Q&A Guidance Document relating to the Fortification Policy, the FDA was unequivocal:

**B4. Is it appropriate to add vitamins and minerals to alcoholic beverages?**
No. Under our fortification policy, we do not consider it appropriate to add vitamins and minerals to alcoholic beverages.

42.     The Fortification Policy defines "fortification" as "the addition of a vitamin, min-eral, or protein to a food." The use of dried acerola juice in Vizzy Hard Seltzer is fortification be-cause this ingredient is used to add Vitamin C.

43.     The Fortification Policy is a guidance that is binding in certain circumstances. Where a food makes an implied nutrient content claim by using a term that suggests that a food helps consumers maintain healthy dietary practices in conjunction with an explicit statement about a nutrient, the product must comply with the Fortification Policy. *See* 21 C.F.R. § 101.65(d).

44.     Identical federal and California laws regulate the content of labels on packaged food and drink. The requirements of the FDCA, and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food

---

[12] Under the U.S. Internal Revenue Code "IRC" 27 CFR Part 7, a malt based hard seltzer is con-sidered a malt beverage which is subject to TTB Labeling and advertising regulations, while a sugar based hard seltzer is considered "beer" and is subject to FDA regulation. Vizzy Hard Selt-zer is derived from sugar. Therefore, Defendant's Products are subject to FDA regulations.

Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on the labeling of packaged food for sale in the United States.

45.     Under the FDCA, the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is false or misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

46.     Further, in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is false and misleading).

47.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

**Defendant's Marketing and Labeling of its Products Violates State and Federal Food Labeling Laws**

48.     As the FDA recognizes in its Fortification Policy, the fortification of unhealthy foods such as alcoholic and carbonated beverages is misleading and deceptive to consumers. The deception is particularly acute where compared to other hard seltzer products in the marketplace that do not contain unlawful advertising and fortification. Thus, the Products are misleading and therefore misbranded.

49.     Further, the Products are required to comply with the Fortification Policy because the Products make nutritional claims.

50.     The term "superfruit" suggests that the Products, because of their nutrient content, may help consumers maintain healthy dietary practices. The Products use the term "superfruit" in

conjunction with the statement "with Antioxidant Vitamin C," which is an explicit statement about a nutrient. *See* 21 C.F.R. 101.65(d). Therefore, the Products make a nutritional claim.

51.     Because the Products make a nutritional claim, they must comply with the Fortification Policy. 21 C.F.R. 101.65(d)(2)(iv).

52.     The Products violate the Fortification Policy because they are carbonated beverages that are fortified with the nutrient Vitamin C. The Products are therefore unlawfully fortified, and the Product labels contain prohibited nutritional claims.  Thus, the Products are misbranded.

53.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, et seq., because the Products' labels state the Products are made "with Antioxidant Vitamin C from Acerola Superfruit," implying the Products are a healthful source of nutrients, even though FDA guidance states that fortification of alcoholic, carbonated beverages is not appropriate and would result in misleading consumers.

54.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, et. Seq.), including but not limited to:

a.     Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.     Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.     Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

55.     Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

c.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

d.   Section 110765, which makes it unlawful for any person to misbrand any food; and

e.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

56.   Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.65(d), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

57.   A reasonable consumer would expect that the Products are a healthful source of nutrients and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA.

58.   Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Consumers would not know that the Products are unlawfully fortified and unlawfully labeled. Its discovery requires investigation well beyond the grocery store aisle and knowledge of FDA regulations and food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that the deleterious effects of alcohol overtime will not be overcome by the fortification of the Products with scant amounts of Vitamin C. Therefore, consumers had no reason to investigate whether the Products actually are a healthful source of nutrients as the labels claim. Thus, reasonable consumers relied on Defendant's representations regarding the nature of the Products.

Class Action Complaint

59.      Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claim that its Products are a healthful source of nutrients.

**Defendant Intends to Continue to Market its Products as Containing Antioxidant Vitamin C from Acerola Superfruit**

60.      Because consumers pay a price premium for products that contain antioxidants and are perceived as providing health benefits, by fortifying their Products and labeling its Products as containing nutrients and superfruit, Defendant is able to both increase its sales and retain more profits.

61.      Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of its Products while decreasing the sales of competitors that do not unlawfully fortify and label their products, and/or (ii) commanding a higher price for its Products because consumers will pay more for these Products due to consumers' demand for healthful products.

62.      The market for hard seltzer products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the antioxidant vitamin C content from superfruit in their Products, Defendant has an incentive to continue to make such false and misleading representations. In addition, other trends suggest that Defendant have no incentive to change their labeling practices.

63.      For example, one market analysis revealed that the market for hard seltzers is expected to grow at a 16% compound annual growth rate through 2027.[13]

64.      To capitalize on the growing market, since introducing its Products in 2020, Defendant has expanded its product line to a new "lemonade hard seltzer" flavor line in April 2021. Vizzy's senior director of above premium flavor has stated "All of the hard seltzers out there are

---

[13] https://www.toptal.com/finance/market-research-analysts/hard-seltzer-industry#:~:text=The%20global%20hard%20seltzer%20market,US%2C%20Canada%2C%20and%20Australia.

basically the same: the same white packaging, the same flavors, same calories and carbs. Vizzy counters that sea of sameness with a unique ingredient - antioxidant vitamin C from acerola superfruit. The campaign brings that to the forefront to make a drinker's choice really simple."[14]

65.     Defendant continues to launch new flavors to diversify its portfolio to maintain their competitive edge, making it likely that Defendant will continue to unlawfully fortify their Products and misleadingly advertise their Products to perpetuate the misrepresentations regarding the healthfulness of their Products.

## PLAINTIFF'S EXPERIENCE

66.     Plaintiff purchased variety 12 packs of Vizzy Hard Seltzer from Target, including from Target in Redwood City, California on June 3, 2021.

67.     Plaintiff made each of her purchases after reading and relying on Defendant's product label that advertised "With Antioxidant Vitamin C from Acerola Superfruit." She was attracted to the Products because, when given a choice, she preferred to receive health benefits while drinking a hard seltzer.

68.     At the time of each of her purchases of the Products, Plaintiff did not know that the Products were unlawfully labeled and would not provide nutritious benefits. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Plaintiff.

69.     Plaintiff not only purchased the Products because of the unlawful labeling, but she also paid more money for the Products than she would have paid for other or a similar alcoholic beverage product that was not unlawfully fortified and labeled with misleading nutrient content claims.

70.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products.

---

[14] https://www.marketscreener.com/quote/stock/MOLSON-COORS-BEVERAGE-COM-14548/news/Molson-Coors-Beverage-nbsp-Vizzy-Hard-Seltzer-launches-ad-campaign-taking-aim-at-lsquo-sea-of-sam-30971771/

71.     Plaintiff continues to desire to purchase alcohol products, including those marketed and sold by Defendant. If Defendant's Products were reformulated to remove the nutrients, and labeled without the unlawful nutrient claims, Plaintiff would likely purchase Defendant's Products again in the future. Plaintiff regularly visits stores where Defendant's Products and other hard seltzers are sold.

72.     Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiff and members of the Class did not receive what they reasonably intended to receive.

## CLASS ALLEGATIONS

73.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

All persons in the State of California who purchased the Products between September 16, 2017 and the present.

74.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

75.     Numerosity: Plaintiff does not know the exact size the Class, but she estimates that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

76.     Common Questions Predominate: This action involves common questions of law and fact to the potential classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products provide health benefits as represented on the Product labels. The common questions of law and

fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

    a.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

    b.  Whether Defendant's actions violate Federal and California laws invoked herein;

    c.  Whether the fortification of the Product is unlawful;

    d.  Whether labeling the Products with nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such misrepresentations;

    e.  Whether Defendant's advertising and marketing regarding the Products sold to the class members was likely to deceive reasonable consumers;

    f.  Whether representations regarding the antioxidant vitamin C in the Products are material to a reasonable consumer;

    g.  Whether representations regarding the use of a superfruit in the Products are material to a reasonable consumer;

    h.  Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

    i.  The amount of profits and revenues earned by Defendant as a result of the conduct;

    j.  Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

    k.  Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

    77.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in

violation of the law as alleged herein.

78.     Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all class members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and that of the class. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

79.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

80.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

Class Action Complaint

## CAUSES OF ACTION

Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff and the Class**

81.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

82.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

83.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

84.     The Products that Plaintiff (and other similarly situated class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

85.     Defendant's acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products provided health benefits as claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8), of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's

acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. Finally, regarding California Civil Code §1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike other alcoholic beverage product manufacturers, it sells Products that contain antioxidant vitamin C.

86.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant continuing practices.

87.     **CIVIL CODE § 1782 NOTICE.** Plaintiff notices and demands that within thirty (30) days from that date of the filing of this Complaint, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and or deceptive practices complained of herein.

88.     Should the violations herein alleged not be corrected or rectified as required by Civil Code § 1782 within 30 days with respect to all Class Members, Plaintiff will seek to amend this Class Action Complaint to seek, on behalf of each Class Member, actual damages of at least $1,000, punitive damages, an award of $5,000 for each Class Member who is a disabled person or senior citizen, and restitution of any ill-gotten gains due to Defendant's acts and practices.

89.     Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

<u>**PLAINTIFF'S SECOND CAUSE OF ACTION**</u>
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiff and the Class**

90.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

91.     Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

92.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that alcoholic beverages could be healthful sources of nutrients.

93.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, she would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less for them.

94.     Defendant's acts and omissions are likely to deceive the general public.

95.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

96.     The aforementioned practices, which Defendant used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

97.     As a direct and proximate result of such actions, Plaintiff and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

98.     Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Plaintiff and those similarly situated lack any adequate remedy at law to obtain this restitution.

99.     Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

100.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiff and the Class**

101.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

102.    Defendant has fraudulently and deceptively informed Plaintiff that the Products are healthful sources of nutrients.

103.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant knew or should have known the composition of the Products, and knew or should have known that the fortifying the Products is disapproved by the FDA, and when done in conjunction with health claims is prohibited by the FDA, and therefore results in misleading consumers. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendant's Products. In misleading Plaintiff and not so informing Plaintiff, Defendant breached its duty to him. Defendant also gained financially from, and as a result of, its breach.

104.    Plaintiff and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been

adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

105.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products.

106.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

107.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

108.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the Class**

109.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

110.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

111.    In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390,

110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 104.20, and 21 C.F.R. 101.65(d), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

112.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products are healthful sources of nutrients; and (ii) fortifying its alcoholic, carbonated beverages in violation of FDA guidance and regulations.

113.    Plaintiff and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

114.    Defendant's acts and omissions are likely to deceive the general public.

115.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

116.    The aforementioned practices, which Defendant has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

117.    As a direct and proximate result of such actions, Plaintiff and the other class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiff and the class members lost the amount they paid for the Products.

118.    As a direct and proximate result of such actions, Defendant has enjoyed, and

continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

119.    Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiff, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon. Plaintiff and those similarly situated lack any adequate remedy at law to obtain this restitution.

120.    Plaintiff seeks, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

121.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

122.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein

123.    Plaintiff and members of the Class members conferred a benefit on the Defendant by purchasing the Products

124.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products are healthful sources of nutrients when, in fact,

the Products are not healthful and FDA guidelines provide that carbonated and alcoholic beverages should not be fortified with nutrients. This harmed Plaintiff and members of the class because they paid a price premium as a result.

125.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

126.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution to his and other members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except as to those causes of action where compensatory damages are not available at law;

D.    An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available at law;

E.    An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available at law;

F.    An award of treble damages, except as to those causes of action where treble damages are not available at law;

G.    An award of restitution in an amount to be determined at trial, except as to those causes of action where restitution is not available at law;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any

amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 16, 2021                 **GUTRIDE SAFIER LLP**

/s/Hayley Reynolds/s/
Hayley Reynolds, Esq.
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

## **EXHIBIT A**

I, Jennifer Marek, declare:

1.   I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.   I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.   I reside in Menlo Park, California. I purchased Vizzy Hard Seltzer variety packs in 2021, including from Target on June 3, 2021 in Redwood City, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 15th day of September 2021, in Menlo Park, California.



Jennifer Marek

MAREK DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION