UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MAREK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MOLSON COORS BEVERAGE COMPANY, et al., <br><br> Defendants. | Case No. 21-cv-07174-WHO <br><br> **ORDER ON MOTIONS TO DISMISS** <br> Re: Dkt. Nos. 20, 21 |

Plaintiffs filed this putative class action against two defendants, Molson Coors Beverage Company (MCBC) and Molson Coors Beverage Company USA LLC (MCBC USA), challenging defendants' allegedly deceptive and unlawful practices in labeling and marketing the "fortified" alcoholic Vizzy Hard Seltzer product with beneficial health statements, including "antioxidant Vitamin C" from a "superfruit." First Amended Complaint ("FAC," Dkt. No. 13) ¶¶ 1-5. They allege that defendants violated various California consumer protection statutes and common law by adding in and promoting Vitamin C in their alcoholic beverage.

MCBC is primarily a holding company that conducts no business in California, so defendants' motion to dismiss is granted for lack of personal jurisdiction. Dkt. No. 20. Otherwise, plaintiffs' claims are plausible and not preempted; the remainder of defendants' motion is denied.

**BACKGROUND**

Plaintiffs contend that the uniform and consistent labeling and marketing of Vizzy products as being made "with Antioxidant Vitamin C from acerola superfruit" falsely and misleadingly implies that the carbonated alcoholic beverages are healthy for consumers or healthier than the other alcoholic seltzers on the market that do not advertise any nutrient content.

FAC ¶¶ 17-20, 22. Plaintiffs also assert that the Vizzy drinks are illegally fortified by defendants' addition of the acerola powder to all Vizzy flavors for the purpose of adding Vitamin C to the product. *Id*. ¶¶ 17-18, 43. They allege that defendants' representations, made to convey that Vizzy is healthy or healthier than other hard seltzers, are false or misleading because: (i) Vitamin C in the amount added to Vizzy does not provide significant health benefits; (ii) isolated antioxidants, as in the added powder-based Vitamin C in Vizzy, do not provide the same health benefits as antioxidants from a diet rich in fruits and vegetables; (iii) most consumers have adequate Vitamin C intake, meaning the added Vitamin C in Vizzy, will "likely pass through the body," and (iv) alcohol consumption interferes with nutrient absorption and alcohol prevents the body from using nutrients by altering the transport, metabolism, and storage of nutrients. FAC ¶¶ 31-35.

Both defendants move to dismiss, arguing that the state law claims are preempted by federal law or are subject to the primary jurisdiction of the Food and Drug Administration, and that the consumer protection claims are not and cannot be sufficiently alleged, the unjust enrichment claim fails, and plaintiffs lack standing to seek injunctive relief. MCBC also moves to dismiss for lack of personal jurisdiction.

**DISCUSSION**

**I.   MOTION TO DISMISS MOLSON COORS BEVERAGE COMPANY**

   **A.   Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. The plaintiff then bears the burden of demonstrating that jurisdiction exists. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (citations omitted). "Conflicts between [the] parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id*. "

"California's long-arm statute allows courts to exercise personal jurisdiction over

defendants to the extent permitted by the Due Process Clause of the United States Constitution." *Core-Vent Corp. v. Novel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993); CAL. CIV. PROC. CODE § 410.10. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800–01.

"There are two types of personal jurisdiction: general and specific." *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). "[G]eneral jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. It exists where a nonresident defendant's activities within a state are "substantial" or "continuous and systematic." *Data Disc.*, 557 F.2d at 1287. Such contracts must "be of the sort that approximate physical presence." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Specific jurisdiction arises when a defendant's specific contacts with the forum give rise or relate to the claim in question. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). "A court exercises specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam BV v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). The Ninth Circuit employs a three-part test to determine whether there is specific jurisdiction over a defendant: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Schwarzennegger*, 374 F.3d at 802.

The first prong of that test may be satisfied by "purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation and internal quotation marks omitted). The second prong

3

does not necessarily require a "a strict causal relationship between the defendant's in-state activity" and the claim, but it does require "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025–26, (2021) (internal quotation marks, citations, and alteration omitted).

The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable." *Id.* If the plaintiff cannot satisfy either of the first two prongs, personal jurisdiction is not established in the forum state. *Id.*

**B.  Application**

MBMC moves to dismiss for lack of jurisdiction, relying primarily on the declaration of Roxanne Stetler, the Vice President, Controller and Chief Accounting Officer, for MCBC who declares that:

> MCBC has not conducted and presently does not conduct any general business operations in the State of California. MCBC does not have any offices, facilities, telephone listings or mailing addresses in California, and it does not engage in any direct advertising or sales of products to California residents. MCBC also does not employ any officers, employees, or agents who transact business in California on its behalf. At all times relevant to this action, and through the present time, any operations conducted using the trade name "MillerCoors" or "Molson Coors" in California have been and are conducted only by and through MCBC's direct or indirect subsidiary entities and not by or through MCBC.

Declaration of Roxanne Stetler (Dkt. No. 20-1) ¶ 5. Stetler also states that MCBC "is principally a holding company" and has not employed any corporate directors or officers located in or working out of California, and that no corporate activities of MCBC were or are directed, controlled, and coordinated from California, but were instead made from corporate headquarters or corporate offices in Colorado, Illinois, or Wisconsin. *Id*. ¶¶ 6-7. Finally, she says that Molson Coors USA "is responsible for the manufacturing, distribution and advertising for the hard seltzer brand VIZZY. Molson Coors [USA] maintains its own separate accounting, books, and records. It has separate bank accounts and maintains separate assets from MCBC." *Id*. ¶ 8. Based on these

4

1    assertions, MCBC argues that plaintiffs cannot allege general or specific jurisdiction over MCBC
2    for the claims plaintiffs make regarding Vizzy.  Dkt. No 20.
3           Plaintiffs respond by pointing to evidence that MCBC distributes Vizzy in California,
4    noting that Vizzy's packaging identifies "Molson Coors Beverage Company" as the distributor
5    and not MCBC USA.  But plaintiffs do not address or dispute Stetler's assertion that MCBC USA
6    has lawfully registered the fictitious name of Molson Coors Beverage Company to use in
7    California, consistent with California law, and it is MCBC USA that manufactures, advertises, and
8    distributes Vizzy in California.  Stetler Decl. ¶¶ 5, 8.
9           Plaintiffs also rely on MCBC's Form-10Q, filed with the Securities and Exchange
10   Commission, where MCBC states (referring to it and its subsidiaries) that "we have been brewing
11   beverages" and "we produce some of the most beloved and iconic beer brands every made," and
12   that "we" is defined in the 10Q "unless otherwise noted" as "including Molson Coors Beverage
13   Company."  Pls Request for Judicial Notice, Ex. B at 10, 27.  These generalities ignore the
14   disclosure that MCBC is "principally a holding company."  *Id*.  The statements in the 10Q are
15   fully consistent with Stetler's declaration that MCBC is "primarily" a holding company and that it
16   is MCBC USA who "is responsible for the manufacturing, distribution and advertising for the hard
17   seltzer brand VIZZY."  Stettler Decl. ¶¶ 6, 8.
18          Finally, plaintiffs note that MCBC is registered to do business in California, disclosing its
19   type of business as "manufacturing and distribution," and that MCBC and MCBC USA share
20   numerous officers and offices.  Pls RJN, Ex. C; Oppo. to MCBC MTD at 2.  MCBC notes that
21   simply being registered with the State of California is insufficient for general jurisdiction.  It also
22   argues that plaintiffs cannot establish specific jurisdiction based on this fact; their claims do not
23   arise from the fact that MCBC is registered with the State of California.
24          I agree.  Plaintiffs provide no caselaw to support the proposition that simply because a
25   corporation has a registered agent for service in a state (here MCBC in California), that is
26   sufficient in and of itself to expose it to general or specific jurisdiction.  *But see AM Tr. v. UBS*
27   *AG*, 681 Fed. Appx. 587, 588–89 (9th Cir. 2017) (unpublished) ("California does not require
28   corporations to consent to general personal jurisdiction in that state when they designate an agent

5

for service of process or register to do business."). Even if registration in California could satisfy the "purposeful availment" prong for specific jurisdiction, there are still no allegations that plaintiffs' claim "arise out of or relate to" MCBC's California activities because it is undisputed that MCBC conducts and directs no activities in California.

As a backup, plaintiffs ask that they be allowed jurisdictional discovery to test whether MCBC distributes Vizzy in California or "was otherwise involved in the decision making regarding the production and labelling" of Vizzy. Pls. Oppo. to MCBC MTD at 3. There is no justification for that discovery. Plaintiffs have not countered MCBC's evidence in the Stetler declaration or otherwise adduced evidence that could contradict or call it into question.

On this record, the motion is GRANTED and MCBC is DISMISSED for lack of jurisdiction. That dismissal is WITHOUT PREJUDICE if further information comes to light that contrsadict the Stetler declarations.

## II. MOTION TO DISMISS CLAIMS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of

fact, or unreasonable inferences." *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Preemption

Defendants' primary argument on their motion to dismiss is that federal law permits them to include fruit juice in Vizzy and because that juice contains an appreciate amount of Vitamin C (at least 20% of the recommended daily value) they are allowed to truthfully disclose the presence of "antioxidant Vitamin C" on the product's label, packing, and marketing. Given the asserted blessing of their conduct under federal law, defendants contend the state law claims are preempted or otherwise fail as a matter of law.

Both sides agree that hard seltzers like Vizzy are regulated by the Food and Drug Administration (FDA) under the Food, Drug, and Cosmetic Act ("FDCA") as modified by the Nutrition Labeling and Education Act ("NELA"). Both sides also agree that under the FDCA, as amended by NELA, states cannot impose any labeling requirement that is not identical to the federal requirements, under 21 U.S.C. §§ 343(q), 343(r), and 343-1(a)(5). *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. Jan. 13, 2021) ("To avoid a patchwork quilt of conflicting state labeling laws, the FDCA includes a preemption provision that establishes a national and uniform standard for certain labeling statements. The statute preempts any state law that establishes 'any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title.' 21 U.S.C. § 343-1(a)(5).").[1]

Plaintiffs argue that their state law claims – all based on assertions that defendants'

---

[1] Defendants do not dispute that if plaintiffs are merely attempting to hold them to federal standards under the FDCA, the state law claims asserting violation of California's Sherman Food Drug & Cosmetic Law ("Sherman Law," Cal. Health & Saf. Code §110100 *et seq*.) that expressly incorporate the FDCA standards are not preempted. *See, e.g., Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *3 (N.D. Cal. Feb. 25, 2013) ("NELA contemplates state enactment and enforcement of labeling requirements as long as they are identical to or parallel NLEA requirements. Although Congress intended to preempt non-identical requirements in the field of food labeling, the purpose of the NLEA is not to preclude all state regulation of nutritional labeling, but to prevent State and local governments from adopting inconsistent requirements with respect to the labeling of nutrients.").

fortification of Vizzy is illegal under federal law and their use of the statement "with Antioxidant Vitamin C from acerola superfruit" on Vizzy labels and marketing is false and misleading – are not preempted because they simply seek to enforce the federal standards. They contend that defendants are illegally fortifying Vizzy with Vitamin C under the FDA's "Fortification Policy" 21 C.F.R. § 104.20[2] and that defendants' marketing implies a health benefit that is false and misleading in violation of 21 U.S.C. § 343(a)(1).[3] *See, e.g., Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-CV-05921-WHO, 2018 WL 1569697, at *4 (N.D. Cal. Mar. 30, 2018) ("the state laws under which plaintiff brings suit—California's UCL, FAL, CLRA, and Sherman Law—impose identical requirements to Section 343(a) in that they also prohibit false and misleading advertising"); *see also Questions and Answers on FDA's Fortification Policy; Guidance for Industry* ("Guidance") at 7 ("Under our fortification policy, we do not consider it appropriate to add vitamins and minerals to alcoholic beverages.").[4]

---

[2] The "fundamental objective" of the Fortification Policy is:

> to establish a uniform set of principles that will serve as a model for the rational addition of nutrients to foods. The achievement and maintenance of a desirable level of nutritional quality in the nation's food supply is an important public health objective. The addition of nutrients to specific foods can be an effective way of maintaining and improving the overall nutritional quality of the food supply. However, random fortification of foods could result in over- or underfortification in consumer diets and create nutrient imbalances in the food supply. It could also result in deceptive or misleading claims for certain foods. The Food and Drug Administration does not encourage indiscriminate addition of nutrients to foods, nor does it consider it appropriate to fortify fresh produce; meat, poultry, or fish products; sugars; or snack foods such as candies and carbonated beverages.

21 C.F.R. § 104.20(a). Foods may be fortified in order to "correct a dietary insufficiency recognized by the scientific community," to restore nutrients to a level representative of the food prior to storage, handling, and processing, "to balance the vitamin, mineral, and protein" content of a food, and "nutrient(s) may appropriately be added to a food that replaces traditional food in the diet to avoid nutritional inferiority." 21 C.F.R. § 104.20(b)-(e). Finally, the Policy provides "(h) Any claims or statements in the labeling of food about the addition of a vitamin, mineral, or protein to a food shall be made only if the claim or statement is not false or misleading and otherwise complies with the act and any applicable regulations." 21 C.F.R. § 104.20(h).

[3] 21 U.S.C § 343(a)(1) "A food shall be deemed to be misbranded-- (a) False or misleading label If (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 350 of this title applies, its advertising is false or misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title."

[4] Available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-questions-and-answers-fdas-fortification-policy

Defendants argue, first, that plaintiffs cannot bring a state law claim to "privately enforce alleged violations of the FDCA." MTD at 8. I have rejected that argument, as have a number of other judges in this District. *See Morgan v. Wallaby Yogurt Co., Inc*., No. 13-CV-00296-WHO, 2013 WL 5514563, at *6 (N.D. Cal. Oct. 4, 2013) (collecting cases).[5]

On the merits, defendants dispute whether the Fortification Policy applies to Vizzy. They contend that Vizzy is not fortified because the Vitamin C comes from fruit juice (the dried powder of the acerola fruit) and there is nothing in the Policy or other FDA regulations that prevents a manufacturer from adding juice to an alcoholic product and then (as otherwise required) disclosing the nutrient content from that addition. Plaintiffs respond that the addition of the Vitamin C as a powder or a juice, for whatever reason (*e.g*., for taste, stability, other manufacturing needs), is an impermissible fortification regardless of defendants' reason or intent. Pls. Oppo. MTD at 9 fn.3. If intent is relevant, they assert that defendants' intent in adding the acerola powder is *for* the addition of Vitamin C – as demonstrated by the fact that defendants add the powder to every flavor of Vizzy – that they then emblazoned on all Vizzy marketing. FAC ¶ 43.

At this juncture, plaintiffs have adequately alleged impermissible fortification. Whether and to what extent purpose and intent is relevant to determining whether defendants have violated the Fortification Policy, and what defendants' purpose and intent is for adding the acerola powder/juice to Vizzy, are better determined on a full evidentiary record. Similarly, whether plaintiffs are correct that adding acerola juice or powder falls within the definition of fortification or whether defendants are right that impermissible fortification occurs only by adding "distinct" vitamins (like ascorbic acid to provide Vitamin C), is better determined on a full evidentiary record showing how and why the acerola juice or powder is added to Vizzy.[6]

Defendants also argue that the Fortification Policy is not binding on Vizzy. Initially,

---

[5] The premarket approval cases defendants rely on are inapposite. *See* MTD at 8-9; Reply ISO MTD at 3.

[6] Defendants rely on the definition of fortification or enrichment as the "addition of discrete nutrients such as vitamins, minerals, or proteins to foods." Reply ISO MTD at 7 (citing 45 FR 6314).

9

defendants contend that the Policy is not binding because the challenged statement does not describe the addition of vitamin with terms such as "added or "plus" but instead accurately indicates the product is "with antioxidant Vitamin C." *See* 21 C.F.R. § 101.54(e)(ii).[7] Plaintiffs argue that "with" is synonymous with the terms identified in the regulation – "more," "fortified," "enriched," "added," "extra," and "plus" – and used by defendants for the same reason, to indicate the addition or inclusion of "antioxidant Vitamin C" specifically. *See Vassigh v. Bai Brands LLC*, No. 14-CV-05127-HSG, 2015 WL 4238886, at *7 (N.D. Cal. July 13, 2015) ("The Court agrees with the latter opinions that statements may violate Section 101.54(g) without using the exact words identified in the regulation. A defendant cannot escape liability simply because it uses a synonym—such as "great source" or "excellent source"—instead of the defined term "good source." The touchstone inquiry is whether the statement either expressly or implicitly characterizes the level of a nutrient in the product."); *see also* 21 C.F.R. § 101.13(b) ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling [ ] may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations" and covers "(4) Reasonable variations in the spelling of the terms defined in part 101 and their synonyms are permitted provided these variations are not misleading (e.g., "hi" or "lo").")

Plaintiffs have plausibly alleged that the Fortification Policy applies to Vizzy under 21 C.F.R. § 101.54(e). Defendants may argue on summary judgment that given the structure of the

---

[7] 21 C.F.R. § 101.54 provides: "(a) [] a claim about the level of a nutrient in a food in relation to the Reference Daily Intake (RDI) established for that nutrient in § 101.9(c)(8)(iv) or Daily Reference Value (DRV) established for that nutrient in § 101.9(c)(9), (excluding total carbohydrates) may only be made on the label or in labeling of the food" with respect to "More" claims under (e):
    (1) A relative claim using the terms "more," "fortified," "enriched," "added," "extra," and "plus" may be used on the label or in labeling of foods to describe the level of protein, vitamins, minerals, dietary fiber, or potassium, except as limited by § 101.13(j)(1)(i) [] provided that:
        (i) The food contains at least 10 percent more of the RDI for vitamins or minerals or of the DRV for protein, dietary fiber, or potassium (expressed as a percent of the Daily Value) per reference amount customarily consumed than an appropriate reference food; and
        (ii) Where the claim is based on a nutrient that has been added to the food, that fortification is in accordance with the policy on fortification of foods in § 104.20 of this chapter.

10

1    applicable regulations, their use or addition of acerola powder does not violate federal law.

2          Defendants also contend that they cannot be liable for a false or misleading claim because

3    their "antioxidant" statement is expressly permitted under 21 C.F.R. § 101.54(g) given the amount

4    of Vitamin C from the acerola powder that is present in Vizzy.[8] That Vizzy may have an

5    otherwise allowable antioxidant nutrient content claim does not also mean Vizzy is not in

6    violation of the Fortification Policy if Vizzy was in fact fortified in violation of the Fortification

7    Policy. Plaintiffs also argue that subsection (g) is not applicable because Vizzy's statement "with

8    Antioxidant Vitamin C from acerola superfruit" does not attempt to characterize the level of

9    antioxidant as "high" or an "excellent source" that are the terms that are governed by that

10   subsection. Again, this possible defense is likewise better determined on a full factual record.

11   While the antioxidant claim might be permissible for some *types* of products, the FDA Guidance

12   notes that fortification could still be misleading when applied to a fortified alcoholic beverage,

13   making it actionable under 21 U.S.C § 343(a)(1) or § 343(r).

14         Finally, defendants assert that the Policy cannot be binding on Vizzy because alcoholic

15   beverages are not called out in the regulation itself (although carbonated beverages are) and

16   alcoholic drinks are only mentioned in the FDA's Guidance. This argument simply reinforces

17   plaintiffs' point that even if not binding – a matter not definitively resolved at this juncture

18   because there are questions of fact concerning why acerola powder was added to the Vizzy

19   product – the FDA's Guidance supports plaintiffs' contention that a fortified alcoholic beverage

20   creates a false and misleading health message.

---

[8] 21 C.F.R. § 101.54 (g) "Nutrient content claims using the term 'antioxidant.' A nutrient content claim that characterizes the level of antioxidant nutrients present in a food may be used on the label or in the labeling of that food when:
    (1) An RDI has been established for each of the nutrients;
    (2) The nutrients that are the subject of the claim have recognized antioxidant activity; that is, when there exists scientific evidence that, following absorption from the gastrointestinal tract, the substance participates in physiological, biochemical, or cellular processes that inactivate free radicals or prevent free radical-initiated chemical reactions;
    (3) The level of each nutrient that is the subject of the claim is sufficient to qualify for the § 101.54(b), (c), or (e) claim (*e.g.*, to bear the claim "high in antioxidant vitamin C," the product must contain 20 percent or more of the RDI for vitamin C).

11

### C.     Primary Jurisdiction

Defendants assert that this case, if not preempted, is subject to the primary jurisdiction of the FDA and should be dismissed or stayed.[9]  Defendants rely heavily on the fact that plaintiffs' FAC appears to cite, almost verbatim, the contents of a letter sent by the Center for Science in the Public Interest ("CPSI") to the FDA encouraging it to take enforcement action to stop alcoholic beverage manufacturers from making fortification claims (specifically including defendants' claims about Vizzy).  The CPSI letter argues that those claims create false and misleading messages of healthfulness given that alcoholic beverages are "empty calories" and alcohol is associated with serious health conditions as well as anti-nutrient properties.  *See* Defs. RJN (Dkt. No. 29), Ex. A.  Defendants argue that plaintiffs' case cannot proceed because the FDA has apparently refused to take an action on the CPSI letter, relying on an "admission" made by different counsel in a different case against these same defendants regarding the fortification of Vizzy.  *See* Defendants Request for Judicial Notice ISO Reply (Dkt. No. 29-1), Ex. B (Second Amended Class Complaint in *Williams, et al. v. Molson Coors Beverage Company USA LL*C, 21-cv-50207 (N.D. Ill.), ¶ 41 (asserting the "FDA has declined to take enforcement action against the Product")).

If defendants' argument is construed as one of primary jurisdiction (rather than preemption, which I rejected above), it fails because defendants seek to dismiss or stay this case while admitting that the FDA is not acting at this time.  Even if there were indications that the FDA might be considering *enforcement* against manufacturers of fortified alcoholic drinks – and defendants present none – that would not justify abstention under primary jurisdiction unless there was some reason to expect that the agency action and the court action would substantially overlap or that identified agency expertise weighs in favor of allowing the agency to take enforcement action first.  No such reasons have been shown.  Similarly, absent evidence that the FDA is actively engaged in *rulemaking* that could impact whether or not Vizzy is accurately viewed as a

---

[9]  The primary jurisdiction doctrine "allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  Application of the primary jurisdiction doctrine "is a matter of the court's discretion."  *Chacanaca v. Quaker Oats Co*., 752 F. Supp. 2d 1111, 1124 (N.D. Cal. 2010).

fortified product or whether the challenged statement can be seen as false or misleading, there are no efficiencies to be gained by dismissing or staying this case under the primary jurisdiction doctrine. That is especially true where, as here, the agency has already issued its regulation as well as substantial guidance to assist manufacturers and courts. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1128 (N.D. Cal. 2013) (staying one claim in light of" indications from agency and "the substantial possibility that the FDA may soon change its breath mint serving requirements" but declining to stay remaining claims where FDA had already issued extensive regulations on the larger subject at issue).

### D. Safe Harbor

In California, unfair competition claims are subject to the safe harbor doctrine, which precludes plaintiff [] from bringing claims based on 'actions the Legislature permits.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (*citing Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999)). "To fall within the safe harbor, the challenged conduct must be affirmatively permitted by statute—the doctrine does not immunize from liability conduct that is merely not unlawful." *Id*. This includes not only California statutes, but also federal statutes and regulations. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164 (9th Cir. 2012).

Defendants argue that they are protected within the safe harbor because they are required to disclose Vizzy's ingredients under federal law. They contend that their truthful disclosure falls within the UCL's "safe harbor" and that plaintiffs consumer protection claims must therefore be dismissed. But while manufacturers may generally be permitted to disclose antioxidant statements under 21 C.F.R. § 101.54(g), that does not necessarily bring a manufacturer of carbonated alcoholic beverages within the UCL's safe harbor against claims of illegality (based on separate regulatory provisions) or insulate it from claims of fraudulent or unfair conduct (for voluntarily including a statement on its packaging and marketing). Providing a safe harbor for the alleged conduct is, assuming the truth of plaintiffs' allegations, arguably contrary to the FDA guidance. *See* Guidance at 7. The conduct alleged by plaintiffs is not protected by the UCL's safe harbor provision.

13

### E. UCL – Unlawful Conduct

Having determined that plaintiffs have adequately alleged an unlawful claim based on the Fortification Policy under the identical requirements of California's Sherman Law – at least at of this juncture – the UCL unlawful prong claim survives.

### F. Reasonable Consumer/Materiality

Each of the California consumer protection statutes invoked by plaintiffs, including the fraudulent and unfair prongs of the UCL, require that the challenged statement be material to a reasonable consumer. Defendants argue that no reasonable consumer could be misled into thinking that drinking hard seltzer is "healthy" as a matter of law because the dangers of consuming alcohol are generally known and the Vizzy packaging included the required Surgeon General's warning regarding dangers of consuming alcohol.[10] They also contend that by merely disclosing that Vizzy contains "antioxidant Vitamin C" they are not conveying specific health messages to reasonable consumers.

This argument ignores the FDA's own guidance that fortification of alcoholic beverages could be false and misleading. It also ignores the disputes of fact about how reasonable consumers would interpret the phrase "with Antioxidant Vitamin C from acerola superfruit." As plaintiffs point out, that statement is prominent on all of the Vizzy packaging and featured prominently in marketing materials to distinguish Vizzy from its competitors. FAC ¶¶ 17-20, 60, 65.[11] This is not one of the rare cases where challenged statements can be determined not to have misled reasonable consumers as a matter of law. *See Chong v. Nestle Water N. Am., Inc.*, No. 20-56373, 2021 WL 4938128, at *1 (9th Cir. Oct. 22, 2021) (affirming district court's determination

---

[10] 27 U.S.C. § 215 "GOVERNMENT WARNING: (1) According to the Surgeon General, women should not drink alcoholic beverages during pregnancy because of the risk of birth defects. (2) Consumption of alcoholic beverages impairs your ability to drive a car or operate machinery, and may cause health problems."

[11] Defendants argue that the use of "superfruit" is mere puffery because there is no defined health benefit associated with superfruit. Reply ISO MTD at 12. However, plaintiffs allege is an "industry term to denote nutrient-dense fruits, synonymous with healthy." FAC ¶ 36. Whether or not that is the case is a matter for proof. Moreover, plaintiffs challenge the use of superfruit in conjunction with both the whole statement in which it appears and as a descriptor of the source of the antioxidant. *See, e.g.*, FAC ¶ 5, 17.

14

spring water label indicated water was sourced from a particular mountain).[12]

### G. UCL – Fraudulent or Unfair Conduct

Defendants complain generally that plaintiffs fail to satisfy Rule 9(b)'s particularity requirement for the fraud and unfair conduct-based claims. Under FRCP 9(b), to state a claim for fraud, a party must plead with "particularity the circumstances constituting the fraud," and the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Plaintiffs have clearly identified the who (defendants), the what (the statement, prominently displayed on all Vizzy packing and marketing), the when (FAC ¶¶ 67, 73) and the why (FAC ¶¶ 68-69, 74-75). That is sufficient to satisfy Rule 9.

### H. Unjust Enrichment

Defendants argue that the unjust enrichment claim must be dismissed with prejudice because there is no stand-alone unjust enrichment cause of action under California law. That argument, as well as the argument that unjust enrichment claims must be dismissed as duplicative of other claims, has been rejected by the Ninth Circuit. *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015) (courts may construe an unjust enrichment claim as a quasi-contract claim seeking restitution and that claim should not be dismissed as superfluous).

Defendants also contend that the unjust enrichment claim should be dismissed because plaintiffs allege no "actionable deception." However, plaintiffs have pleaded that the "antioxidant Vitamin C" statement was false and misleading because, among other allegations, the addition of

---

[12] The inappropriateness of determining these issues as a matter of law are highlighted by defendants' Reply where they attempt to undermine the assertions in plaintiffs' FAC as to why the challenged statement is false or misleading by citing information from the National Institutes of Health and attempting to distinguish scientific studies plaintiffs rely on. *See* Reply ISO MTD at 10-11. These disputes cannot be resolved at this juncture.

Vitamin C to Vizzy does not result in antioxidant benefits and the addition of Vitamin C to alcoholic drinks is false and misleading because alcohol inhibits nutrient absorption. FAC ¶¶ 34-35.

Finally, defendants assert that the claim must be dismissed because plaintiffs do not allege that they did not receive the benefit of the bargain. *Tae Youn Shim v. Lawler*, 17-CV-04920-EMC, 2019 WL 2996443, at *20 (N.D. Cal. July 9, 2019) (dismissing unjust enrichment claim based on plaintiffs' failure to allege they did not receive the benefit of their contractual bargain). Plaintiffs expressly allege that "the Products are worth less than what Plaintiffs and members of the Class paid for them." FAC ¶¶ 76, 79. That is sufficient.

### I.     Injunctive Relief

Defendants contend that plaintiffs, by virtue of filing this suit, know that drinking alcoholic beverages like Vizzy is not healthy, even with the addition of Vitamin C. Therefore, defendants move to dismiss plaintiffs' request for injunctive relief for lack of standing because there is no possibility in the future that these plaintiffs will be misled. However, as plaintiffs have pleaded that they might purchase defendants' products in the future (if they are either reformulated to remove the nutrients and labeled without the unlawful and misleading nutrient claims) or might purchase but pay less for the products, that is sufficient to confer standing at this juncture. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) ("In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. [] In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.").

### CONCLUSION

For the foregoing reasons, MCBC's motion to dismiss for lack of personal jurisdiction is

GRANTED without prejudice.  Defendants' motion to dismiss the claims is DENIED.

**IT IS SO ORDERED.**

Dated: January 14, 2022



William H. Orrick
United States District Judge