REDACTED

1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)

2   MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)

3   100 Pine Street, Suite 1250
San Francisco, CA 94111

4   Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

5

6   Attorneys for Plaintiffs

7                  UNITED STATES DISTRICT COURT FOR THE

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10   JENNIFER MAREK and ISABELLE DWIGHT     CASE NO. 21-cv-07174-WHO
as individuals, on behalf of themselves, the gen-

11   eral public and those similarly situated,     **PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR APPROVAL OF

12       Plaintiffs,                           CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND

13                                             AUTHORITIES IN SUPPORT
v.                                        THEREOF**

14

15   MOLSON COORS BEVERAGE COMPANY          MOTION HEARING
USA LLC and MOLSON COORS BEVERAGE

16   COMPANY,                                DATE:      February 22, 2023
TIME:      2:00pm

17       Defendants.

18                                           ZOOM CONFERENCE

19                                           Judge William H. Orrick

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 22, 2023 at 2:00pm, or as soon as the matter may be heard, via Zoom videoconference, before the Honorable William Orrick, Plaintiffs Jennifer Marek and Isabelle Dwight ("Plaintiffs")[1] shall and hereby do move the Court for an order:

(1)    granting preliminary approval to the Settlement;

(2)    approving, for settlement purposes only, the certification of a Settlement Class defined as all persons, other than Excluded Persons,[2] who, during the Class Period of January 1, 2020 through the date of preliminary approval, purchased, in the United States, any Vizzy brand hard seltzer beverages, except for purpose of resale;

(3)    approving and ordering the implementation of the Notice Plan set forth in the Settlement Agreement; and

(4)    setting a date for a Final Approval Hearing.

A copy of the [Proposed] Order Granting Preliminary Approval of Class Action Settlement is attached to the Settlement Agreement as Exhibit C and also separately submitted herewith.

**PLEASE ALSO TAKE NOTICE** that, after expiration of the time for Class Members to opt out or object, and upon the occurrence of the final approval hearing, Plaintiffs will seek entry of a further order:

(1) granting final approval to the Settlement and entering judgment thereon;

(2) requiring Defendant Molson Coors Beverage Company USA LLC ("Defendant") to

---

[1] The capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated. Jennifer Gannon, Darren Williams, Evvie Eyzaguirre, Brandi Fike, Lance Waldron, Jessica Tempest, and Vivian Nogueras are named as Plaintiffs in the proposed Second Amended Complaint (Dkt. 56). They join in this motion and are included in the definition of "Plaintiffs" as used herein.

[2] Excluded from the Class are (1) the Honorable Judge William Orrick, the Honorable Iain D. Johnston, the Honorable Lisa Jensen, the Honorable William P. Dimitrouleas, the Honorable Jay Gandhi (Ret.), and any member of their immediate families; (2) any government entity; (3) Defendant; (4) any entity in which Defendant has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opt-out of the Settlement Class.

change its labeling and advertising;

(3) requiring Defendant to pay all Valid Claims made by Class Members under the Settlement;

(4) awarding a class representative incentive award of $5,000 each to the named plaintiffs Marek, Dwight, Williams, Gannon, and Eyzaguirre and $2,500 each to Fike, Waldron, Tempest, and Nogueras; and

(5) awarding attorneys' fees and expenses to Plaintiffs' counsel.

A copy of the [Proposed] Order Granting Final Approval of Class Action Settlement is attached to the Settlement Agreement as Exhibit D.

This Motion is based on Federal Rule of Civil Procedure 23, this Notice of Motion, the supporting Memorandum of Points and Authorities, the Declaration of Seth Safier (the "Safier Decl.") filed herewith, the Declaration of Spencer Sheehan (the "Sheehan Decl.") filed herewith, the Declaration of William Wright (the "Wright Decl.") filed herewith, the Declaration of Steven Weisbrot (the "Weisbrot Decl.") filed herewith, and the pleadings and papers on file in this action, and any other matter of which this Court may take judicial notice.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     PROCEDURAL HISTORY....................................................................................1
        A.      The *Marek* Action .................................................................................1
        B.      The *Williams* Action .............................................................................2
        C.      The *Eyzaguirre* Action..........................................................................3
        D.      Settlement Negotiations .........................................................................4

III.    BENEFITS CONFERRED ON THE CERTIFIED CLASS UNDER THE
        PROPOSED SETTLEMENT. ...............................................................................4
        A.      Injunctive Relief.....................................................................................4
        B.      Cash Payments .......................................................................................5
        C.      Administrative Expenses, Attorneys' Fees and Costs, Representative
                Service Awards .......................................................................................5

IV.     THE COURT SHOULD APPROVE THE SETTLEMENT. ...................................6
        A.      Legal Framework ....................................................................................6
        B.      The Settlement Is Fair, Adequate, and Reasonable.......................................7
                1.      Procedural Concerns .....................................................................7
                2.      Substantive Concerns ....................................................................9

V.      THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT
        CLASS .................................................................................................................14

VI.     THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE ....17

VII.    APPROVAL OF THE CLAIMS ADMINISTRATOR .........................................19

VIII.   APPROVAL OF THE REQUEST FOR ATTORNEYS' FEES AND
        EXPENSES. ........................................................................................................19
        A.      Plaintiffs' Counsel's Requested Fee Is A Reasonable Percentage of the
                Total Benefit Made Available To the Class...............................................20
        B.      As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also Reasonable
                When Using The Lodestar Approach.........................................................21
        C.      Plaintiffs' Counsel Requests an Award of Its Actual Expenses. ................26

IX.     APPROVAL OF THE INCENTIVE AWARDS. ...................................................27

X.      THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ...................28

XI.     CONCLUSION ...................................................................................................29

Plaintiffs' Motion for Approval of Class Settlement – Case No. 21-cv-7174-WHO

## TABLE OF AUTHORITIES

### CASES

*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428-MHP, 2007 U.S. Dist. LEXIS
    83147 (N.D. Cal. Oct. 30, 2007); ...........................................................................9

*Allied Fire Prot. v. Diede Constr., Inc.*, 127 Cal. App. 4th 150 (2005)......................................12

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...............................................................14

*Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349 (N.D. Ill. 1974) ............25, 26

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407 (1991) ....................................................21

*Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ..................................20

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996)....................................................25

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017)................................................11

*Cazares v. Saenz*, 208 Cal. App. 3d 279 (1989) ........................................................................24

*City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988) ................................24, 26

*Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797 (W.D. Wash.
    May 3, 2013) ........................................................................................................21

*Downey Cares v. Downey Community Dev. Comm'n,* 196 Cal. App. 3d 983 (1987) ...............24

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454 (9th Cir.
    2000) ...........................................................................................................6, 28

*Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 U.S. Dist.
    LEXIS 204099 (N.D. Cal. Feb. 4, 2021) ...........................................................23

*Embry v. Acer America Corp.*, Case No. 09-cv-01808-JW, Dkt.# 218 (N.D. Cal.
    Feb. 14, 2012) ....................................................................................................28

*Flores v. TFI Int'l, Inc.*, No. 12-cv-05790-JST, 2019 U.S. Dist. LEXIS 65754
    (N.D. Cal. Apr. 17, 2019) ..................................................................................13

*Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832 (N.D. Cal. Apr. 22,
    2010) ...................................................................................................................9

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893
    (C.D. Cal. Feb. 27, 2008) ..................................................................................28

*Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal.

Jan. 26, 2007) ............................................................................................................ 20, 21

*Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465

(1984) ........................................................................................................................... 26

*Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 07-05923 WHA, 2015 WL

2438274, at \*5 (N.D. Cal. May 21, 2015) ..................................................................... 23

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ........................................ 6, 7, 15, 16

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS

213045  (N.D. Cal. Dec. 17, 2018) .................................................................................. 7

*Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010) ...................................................... 12

*In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, 2016

WL 6663005 (N.D. Cal. Nov. 11, 2016) .......................................................................... 23

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ..................... 12

*In re Continental Illinois Securities Actions*, 962 F.2d 566 (7th Cir. 1993) .............. 25

*In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, 2014 WL

1266091 (N.D. Cal. Mar. 26, 2014) ................................................................................ 19

*In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 WL 5382544

(N.D. Cal. Dec. 22, 2008) ................................................................................................ 13

*In re Optical Disk Drive Prod. Antitrust Litig.,* 2016 WL 7364803 (N.D. Cal. Dec.

19, 2016) .......................................................................................................................... 23

*In re Tableware Antitrust Litigation*, 484 F. Supp. 2d 1078 (N.D.Cal. 2007) ............. 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291(9th Cir. 1994) ......... 23

*In re Wireless*, 253 F.R.D. 630 (S.D. Cal. 2008) ............................................................. 15

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ............................................................ 21

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .................................................................... 24

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ............................................... 13

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000) ............................. 21, 25

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2nd Cir. 1998) ....................................... 23

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................. 6

*Lipuma v. American Express Company*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................... 11

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal.

　　Sept. 2, 2011) ................................................................................................................ 20

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 WL 4473183

　　(S.D. Cal. Oct. 6, 2008) .................................................................................................. 10

*Maria P. v. Riles*, 43 Cal. 3d 1281 (1987) ................................................................................ 24

*Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059 (N.D.

　　Cal. Jan 23, 2017) .......................................................................................................... 28

*Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338 (9th Cir. 1980) ......................................... 18

*Miletak v. Allstate Ins. Co.,* No. C 06-03778 JW, 2010 U.S. Dist. LEXIS 26913, at

　　*36 (N.D. Cal. Mar. 5, 2010) .......................................................................................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004) ............ 8, 13

*Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29,

　　2014) .............................................................................................................................. 20

*Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542 (2010) ............................................................. 21

*Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311 (1983) ................................................................... 24

*Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2020 U.S. Dist.

　　LEXIS 211546 (N.D. Cal. Aug. 19, 2020) ....................................................................... 9

*Ramos v. Countrywide Home Loans*, Inc. 82 Cal. App. 4th 615 (2000) .................................... 21

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 9448 (9th Cir. 2009) ...................................... 8, 9, 14

*Rosenburg v. I.B.M.*, No. CV-06-00430-PJH 2007, 2007 WL 128232 (N.D. Cal.

　　2007) .............................................................................................................................. 17

*Serrano v. Priest* ("*Serrano III*")*,* 20 Cal. 3d 25, 49 (1977) ............................................... 21, 24

*Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621 (1982) ......................................................... 24

*Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301 (9th Cir. 1990) .................... 20

*Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ..................... 28

*Stern v. Gambello*, 480 F. App'x 867 (9th Cir.2012)) aff'd (Sept. 9, 2013) ............................. 21

*Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74 (1986) ................................................... 26

*Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711

    (N.D. Cal. Aug. 25, 2017) ........................................................................................ 13

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001) ........................................ 25

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .................. 23

*Valentino v Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir 1996) .................................. 17

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................ 27

*Vincent v. Hughes Air West*, 557 F.2d 759 (9th Cir. 1977) ........................................ 27

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...................................... 26

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................ 16

*Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 240 (2001) ........................... 26

*Wilson v. Airborne, Inc.*, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) .................... 26

*Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826

    (N.D. Cal. Apr. 1, 2011) ......................................................................................... 20

**STATUTES**

28 U.S.C. § 1715 ............................................................................................................. 19

**OTHER AUTHORITIES**

2 Newberg at § 4.27 ....................................................................................................... 17

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.) ............................. 8

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................................... 8

Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action

    Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1333 (2006) ................ 27

Wright & Miller, FEDERAL PRACTICE & PROCEDURE (3d ed. 2008) .......................... 17

**RULES**

Fed. R. Civ. P. 23 (b)(3) ......................................................................................... 16, 17

Fed. R. Civ. P. 23(e) ........................................................................................................ 6

Fed. R. Civ. P. 23(e)(1) .................................................................................................. 14

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 7

Fed. R. Civ. P. 23(e)(2)(A)-(B) ................................................................................................. 7

Fed. R. Civ. P. 23(e)(2)(C)-(D) ................................................................................................. 9

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................................................. 12

Plaintiffs' Motion for Approval of Class Settlement – Case No. 21-cv-7174-WHO

REDACTED

I.  **INTRODUCTION**

The Settlement Agreement (hereafter, "Settlement" or "Settlement Agreement") and its exhibits, filed herewith (Safier Decl. Ex. A), were negotiated following the guidelines provided in the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines") and meet all the criteria for approval under Federal Rule of Civil Procedure ("Rule") 23.

Beginning on or around April 2020, Defendant began manufacturing and selling a hard seltzer product under the brand name "Vizzy" (the "Products"). The Products uniformly and consistently advertise "with antioxidant vitamin C from acerola superfruit" on the front label and packaging. Plaintiffs allege the label claims are unlawful, misleading, and designed to deceive consumers into purchasing Defendants' Products. Plaintiffs allege that the use of the label claims allowed Defendant to obtain a price premium from consumers. Defendant denies Plaintiffs' allegations and contends that its conduct was not wrong, complied with federal and state law and does not give rise to any liability.

After discovery and multiple mediation sessions, Plaintiffs and Defendant agreed to settle Plaintiffs' claims in this case, as well as the claims in similar cases pending in the Northern District of Illinois and Southern District of Florida. In sum, Defendant has agreed to pay $9.5 million as a common fund to pay refunds to Settlement Class Members, notice and administration costs, incentive awards, and attorneys' fees and expenses.

II.  **PROCEDURAL HISTORY**

A.  **The *Marek* Action**

On September 16, 2021, the *Marek* Plaintiffs, by and through their counsel Gutride Safier LLP, filed this action (the "*Marek* Action"). The *Marek* Plaintiffs allege that Defendant violated California law by unlawfully and deceptively marketing and selling the Products with the claim "with antioxidant vitamin C from acerola superfruit" on the front label. They allege that the front label claim is both unlawful and misleading. They further allege that use of the term "with" to indicate the addition of nutrients to the Products subjects the claim to 21 C.F.R. § 101.54(e). Thus, they allege, the Product labels violate 21 C.F.R. §101.54(e) because they do not comply with the fortification policy in 21 C.F.R. § 104.20. The *Marek* Plaintiffs also allege that the

Products' marketing and labeling is also misleading because reasonable consumers would believe they will receive health benefits from the Product based on the "with antioxidant vitamin C from acerola superfruit" claim, but that consumers will not receive any such benefits. The *Marek* Plaintiffs asserted claims for violations of the California Consumer Legal Remedies Act, Civil Code § 1780, *et seq.* ("CLRA"), false advertising under California Business and Professions Code § 17500, *et seq.*; unfair business practices under California Business and Professions Code § 17200, *et seq.*; and fraud, seeking damages, an injunction and other relief. *Marek* Plaintiffs sought to pursue these claims on behalf of themselves and all purchasers of Vizzy products in California (other than resellers) between September 16, 2017, and the present.

On January 14, 2022, this Court denied Defendant's motion to dismiss California Plaintiffs' claims against Molson Coors Beverage Company USA LLC. Following that decision, *Marek* Plaintiffs conducted discovery, secured production of thousands of pages of documents, obtained critical information pursuant to interrogatories, conducted a 30(b)(6) deposition of Defendant, and engaged and consulted with a damages expert.

In conjunction with this motion, the *Marek* Plaintiffs seek leave to amend their complaint to add Brandi Fike of Pennsylvania, Lance Waldron of Colorado, Jessica Tempest of New York, and Vivian Nogueras of Florida as plaintiffs along with claims under Pennsylvania, Colorado, New York, and Florida law in this action for settlement purposes only.

### B.  The *Williams* Action

On May 22, 2021, Darren Williams, by and through his counsel Sheehan & Associates, P.C. ("Sheehan"), filed a class action complaint in the Northern District of Illinois against Molson Coors Beverage Company USA LLC, entitled *Williams v. Molson Coors Beverage Company USA LLC*, No. 21-cv-50207 (the "*Williams* Action"). In the *Williams* Action, the Williams Plaintiffs claim violations of the Magnuson Moss Warranty Ac, 15 U.S.C. § 2301, New York General Business Law §§ 349-350, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, negligent misrepresentation, fraud, and unjust enrichment. Williams sought to pursue claims on behalf of himself and all purchasers the Products in Illinois. Gannon sought to pursue claims on behalf of herself and all purchasers of the Products in New York.

REDACTED

On September 28, 2021, Defendant moved to dismiss the amended complaint. After the *Williams* Plaintiffs were granted leave to, and did, file a Second Amended Complaint, Defendant moved to dismiss the Second Amended Complaint on December 6, 2021. The court took the motion under advisement, where it remained pending until the parties notified the court that a proposed resolution had been reached. Thereafter, on September 12, 2022, the court issued an order striking the motion without prejudice to refile "in the unlikely event that the parties' settlement discussions are unsuccessful."

The *Williams* Action also proceeded through discovery, where Defendants served interrogatories, requests for production, and took fact depositions of Plaintiffs Williams and Gannon. Fact discovery closed on July 1, 2022. Plaintiffs' deadline for filing their motion for class certification briefing was set for August 2, 2022.

In conjunction with this motion, *Marek* Plaintiffs are filing a motion for leave to amend their complaint to add the plaintiffs and claims from the *Williams* Action into this action for settlement purposes only. Following the filing of this motion, Sheehan & Associates will file a stipulation of dismissal of the *Williams* Action.

**C. The *Eyzaguirre* Action**

On May 11, 2022, Plaintiff Evvie Eyzaguirre, by and through her counsel Sheehan and The Wright Law Office ("Wright"), filed a Class Action Complaint in the United States District Court for the Southern District of Florida (entitled *Eyzaguirre v. Molson Coors Beverage Company USA LLC*, Case No. 22-cv-60889) alleging claims for violations of the Florida Deception and Unfair Trade Practices Act, Magnuson Moss Warranty Act, negligent misrepresentation, fraud, and unjust enrichment. Eyzaguirre sought to pursue claims on behalf of herself and all purchasers the Products in Florida, Mississippi, South Carolina, Louisiana, and Arkansas.

The parties submitted a notice of settlement and the court stayed the case on October 17, 2022.

In conjunction with this motion, *Marek* Plaintiffs are filing a motion for leave to amend their complaint to add the plaintiff and claims from the *Eyzaguirre* Action into this action for settlement purposes only.

### D. Settlement Negotiations

The Parties engaged in extensive settlement discussions before reaching this Settlement. On July 28, 2022, the Parties participated in an all-day mediation conducted by Honorable Jay Gandhi (Ret.) at JAMS. The Parties actively continued settlement efforts over the next few weeks and attended a second mediation with Hon. Jay Gandhi on August 12, 2022. That mediation resulted in the settlement memorialized in the Agreement.

### III. BENEFITS CONFERRED ON THE CERTIFIED CLASS UNDER THE PROPOSED SETTLEMENT.

The Settlement resolves claims between Defendant and the class of United States residents who, during the Class Period, purchased, in the United States, any of the Products, except for purpose of resale during the period of September 16, 2017, through the date of Preliminary Approval. Excluded persons are (1) the Honorable Judge William Orrick, the Honorable Iain D. Johnston, the Honorable Lisa Jensen, the Honorable William P. Dimitrouleas, the Honorable Jay Gandhi (Ret.), and any member of their immediate families; (2) any government entity; (3) Defendant; (4) any entity in which Defendant has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opt-out of the Settlement Class. Under the Settlement Agreement, Class Members (except any such Person who has filed a proper and timely request for exclusion from the Class), will agree to release all Allegations, Claims, or contentions related to the Released Claims.

### A. Injunctive Relief

Defendant agrees that, upon Final Approval, the Court shall enter a Permanent Injunction precluding Defendant from using the phrase "with antioxidant vitamin C from acerola superfruit" in any Labeling, Primary Packaging, or Secondary Packaging of any Product, which injunction shall become binding and enforceable against Defendant on the Effective Date. Defendant shall

be permitted, at its option, to include acerola cherry on the Ingredient Statement on the Product, to call out "acerola cherry" on front of the Product Label, and to list Vitamin C in compliance with FDA requirements on the Nutrition Facts panel.

**B. Cash Payments**

Defendant also agreed to create a non-revisionary Settlement Fund of $9,500,000 against which Class Members may file a Claim to receive a Cash Payment of up to the following: five dollars ($5) per 24-pack Unit of the Product purchased; three dollars ($3.00) per 12-pack Unit of the Product purchased; and seventy-five cents ($0.75) per Single Can Unit of the Product purchased for personal use. All claimants that submit a Valid Claim are entitled to a Minimum Cash Payment of $6.00. However, the actual Cash Payment received may be reduced pro rata depending on the number of Valid Claims and the cost of other expenses paid out of the Settlement Fund. If a class member does not provide Proof of Purchase, the claimant can claim a maximum Cash Payment of $15.00 per Household. "Proof of Purchase" means a receipt or other documentation from a third-party retailer (such as a grocery or convenient store) that reasonably establishes the fact and date of purchase of the Product between January 1, 2020 and the date of preliminary approval in the United States. "12-pack Unit" means a single quantity of a 12-pack of the Product as sold at retail, "24-pack Unit" means a single quantity of a 24-pack of the Product as sold at retail, "Single Can Unit" means a single quantity of a 24-ounce can or 16-ounce can of the Product as sold at retail.

The Claim Form is simple. The form can be completed online or downloaded and submitted by mail, and is designed to be completed in minutes. (Settlement ¶¶ 4.1-4.3 and Exh. A.) It requires no purchase details other than the name and number of Products purchased and approximate month(s) and year(s) of purchase. (Id.)

**C. Administrative Expenses, Attorneys' Fees and Costs, Representative Service Awards**

All costs of notice and administration of the Settlement (the "Administration Costs") will be paid from the Settlement Fund. (Settlement ¶ 4.3.)

In addition, Plaintiffs will request payment from the Settlement Fund of Incentive Awards

of $5,000 each for Plaintiffs Marek, Dwight, Williams, Gannon, and Eyzaguirre and $2,500 each for Plaintiffs Fike, Waldron, Tempest, and Nogueras. (*Id*. ¶ 6.2.) The Incentive Awards are designed to compensate Plaintiffs for (1) the time and risk they took in prosecuting this action (including the risk of liability for Defendant's costs and for negative attention from the press and on social media) and (2) agreeing to a release broader than the one that will bind settlement class members. (Id.)

Plaintiffs also will request payment from the Settlement Fund of their out of pocket expenses (approximately $70,000) plus attorneys' fees in the amount of $2,500,000. (Id. ¶ 6.1.1) This request is in line with standard awards under other common fund settlements, under which fees are awarded as percentage of the fund, as set out in *Williams v. MGM Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir. 1997). The request also is also reasonable under a lodestar-multiplier cross-check. The reasonableness of this request is discussed in Section VIII, *infra*.

## IV.   THE COURT SHOULD APPROVE THE SETTLEMENT.

### A.  Legal Framework

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1269, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. "The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). A decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000). The Court must consider whether the settlement as a whole is reasonable; it stands or falls in its entirety. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998) ("*Hanlon*"). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. Under Ninth Circuit precedent, the district court must balance a number of factors including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the

REDACTED

trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* Rule 23(e)(2) similarly requires the district court to consider whether:

> (A) the class representatives and Plaintiffs' Counsel have adequately represented the class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:

> > (i) the costs, risks, and delay of trial and appeal;

> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> > (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court should apply "the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13 (N.D. Cal. Dec. 17, 2018).

## B. The Settlement Is Fair, Adequate, and Reasonable

### 1.    Procedural Concerns

The Court must consider whether "the class representatives and Plaintiffs' Counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon*, 150 F.3d at 1026.

### a.    Adequate Representation of the Class

As discussed more fully in Section V, *supra*, Plaintiffs have no conflicts of interest with

-7-

the Settlement Class and have invested significant time and resources in this litigation. Plaintiffs'
Counsel has successfully represented numerous plaintiff classes, involving a variety of claims, in
state and federal courts throughout the country and effectively represented the class interests in
this case.

### b.    Arm's Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's-length, non-col-
lusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g
Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are
reached "following sufficient discovery and genuine arms-length negotiation," both of which oc-
curred here. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal.
2004) ("*DIRECTV*"); 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in
determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527
(quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to ap-
prove a settlement if most of the discovery is completed because it suggests that the parties ar-
rived at a compromise based on a full understanding of the legal and factual issues surrounding
the case." *DIRECTV*, 221 F.R.D. at 527 (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Mat-
thew Bender 3d ed.)).

Here, before agreeing upon the terms of the Settlement, the parties engaged in extensive
factual investigation, which included document productions and interrogatories served and
answered by the Parties. Safier Decl. ¶¶ 8-14. The parties also undertook briefing and argument
on various significant legal issues. *Id.* ¶¶ 6-7. The record was thus sufficiently developed that the
parties were informed as to the Court's views regarding viability of the claims and able to
adequately evaluate the strengths and weaknesses of their respective positions and risks to both
sides if the case did not settle. *Id.* ¶ 19.

The parties negotiated the proposed Settlement in good faith with the assistance of an
independent experienced mediator, the Honorable Jay Gandhi (Ret.). *Id.* ¶ 20. "The assistance of
an experienced mediator in the settlement process confirms that the settlement is non-collusive."
*Adams v. Inter-Con Sec. Sys. Inc.*, No. C-06-5428-MHP, 2007 U.S. Dist. LEXIS 83147 at *3

(N.D. Cal. Oct. 30, 2007); *see also Rabin v. PricewaterhouseCoopers LLP*, No. 16-cv-02276-JST, 2020 U.S. Dist. LEXIS 211546, at *25 (N.D. Cal. Aug. 19, 2020) (finding a settlement was non-collusive where the parties participated in two arms-length settlement negotiations overseen by experienced and neutral mediators).

## 2.   Substantive Concerns

Rule 23(e)(2)(C) and (D) set forth factors for conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," the Court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Plaintiffs also must identify and explain any differences between the class proposed in the complaint and the Settlement Class and between the claims in the complaint and the Released Claims, and discuss the effect of the Settlement on the *Marek* Action. District Guidelines ¶ 1(a), (b), (d).[3]

### a.   Strength of Plaintiffs' Case and Risks of Continued Actions.

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 9448, 965 (9th Cir. 2009)).

---

[3] An explanation of the potential recovery and the discount between those amounts and the Settlement Amount is provided in section IV.B.2(a), pursuant to District Guidelines 1(c). A summary of the allocation plan, an estimate of the expected Valid Claims, and confirmation that no portion of the Settlement Amount will revert to Defendant are provided in sections III.B and IV.B.2(b), pursuant to District Guidelines 1(e), (f), and (g).

REDACTED

In considering whether to enter into the Settlement, Plaintiffs, represented by counsel experienced in class action litigation, weighed the risks inherent in establishing all the elements of their claims in a jury trial, as well as the expense of trial and likely duration of post-trial motions and appeals. Plaintiffs agreed to settle this litigation on these terms based on their careful investigation and evaluation of the facts and law relating to Plaintiffs' allegations and consideration of the facts and views expressed by the mediators and Defendant during the settlement negotiations. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795, 2008 U.S. Dist. LEXIS 78314, at *6 (S.D. Cal. Oct. 6, 2008) ("Plaintiff's Counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval.").

Plaintiffs and Plaintiffs' Counsel were aware that, in order to prevail at trial, they would have to prove that Defendant's labeling and advertisements were unlawful and misleading; that consumers relied on the misrepresentations; the representations caused injuries; and that there were recoverable damages or restitution for the Class. Defendant also would likely oppose class certification. Although Plaintiffs believe the evidence obtained in discovery established the prerequisites for certification as well as Defendant's liability and damages, Defendant vigorously denies those allegations. Among other things, Defendant was prepared to argue that its labeling advertising was truthful and not misleading to a reasonable consumer, and that applicable federal regulations did not prohibit labeling of the product in the way it did. Further, Plaintiffs faced challenges in certifying a class and, if a class or classes were certified, establishing the amount of class-wide damages.

While Plaintiffs' Counsel is confident in its positions and believe Plaintiffs' claims are strong, Plaintiffs' Counsel is also experienced and realistic enough to know that the recovery and certainty achieved through settlement, as opposed to the uncertainty inherent in the trial and appellate process, weighs heavily in favor of settlement, particularly given the above risks, which could easily have impeded Plaintiffs' successful prosecution at trial and in an eventual appeal. Safier Decl. ¶¶ 27-30. Under the circumstances, Plaintiff and Plaintiffs' Counsel appropriately determined that the instant settlement outweighs the gamble of continued litigation. *Id.* Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Id.*

-10-

REDACTED

Thus, even in the best case, it could take years to secure any meaningful relief for Class Members. *See Lipuma v. American Express Company*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

Further, a comparison of the Settlement award to the potential damages that might be recovered for the Class at trial, given the risks of the litigation, supports the reasonableness of the Settlement. *See* N.D. Cal. Guide ¶1(d) (preliminary approval motion should set forth "potential recovery if plaintiffs were to prevail" and "likely recovery per plaintiff" under the settlement). Plaintiffs' damages expert has opined that the price premium associated with the claim is eleven percent (11%). Safier Decl. ¶ 16. Defendant has provided evidence that total, gross sales of the Product to its distributors during the class period is at least ███████ *Id.* ¶ 23. Thus, if Plaintiffs recovered the entire amount of monetary damages under the price premium model, the maximum potential recovery available to Class Members would be approximately ██████ *Id.* Even after trial, Defendant might be successful at arguing that Class Members were not entitled to monetary compensation for their purchase of the Products. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131-32 (9th Cir. 2017) ("Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability."). Under the Settlement, Class Members can obtain Cash Payments of up to (1) five dollars ($5) per 24-pack Unit of the Product purchased; three dollars ($3.00) per 12-pack Unit of the Product purchased; and seventy-five cents ($0.75) per Single Can Unit of the Product purchased. With a modelled eleven-percent price premium, a Settlement Class Member who purchased one 12-pack Unit at $16.99 would be eligible for only $1.87, but under the Settlement, the same individual will receive $6.00. And, although the $9.5 million Settlement Fund is less than the maximum amount Plaintiffs could recover if fully successful at trial, it is reasonable in light of the risks of proceeding to trial. Moreover, even if Plaintiffs won at trial, Class Members would still need to file claims in order to receive compensation as Defendant has no records of individual purchasers, and the recovery would likely be lower. The Settlement is a very favorable outcome given the substantial risks of continuing with this complex litigation,

REDACTED

1  and the uncertainty inherent in trial, as well as the advantages of obtaining an immediate benefit

2  for Class Members and avoiding the substantial expenses of further litigation.

3         The Settlement release is no broader than a *res judicata* release that would be obtained af-

4  ter trial. The Settlement releases only claims that were or could have been asserted regarding

5  Product purchases during the Class Period—the very issues in suit. *See Allied Fire Prot. v. Diede*

6  *Constr., Inc.*, 127 Cal. App. 4th 150, 155 (2005) ("Res judicata serves as a bar to all causes of ac-

7  tion that were litigated or that could have been litigated in the first action."); *see also In re An-*

8  *them, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) ("the Ninth Circuit allows

9  federal courts to release not only those claims alleged in the complaint, but also claims 'based on

10  the identical factual predicate as that underlying the claims in the settled class action.'") (quot-

11  ing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Any Class Member's claims for

12  personal injury against Defendant are specifically excluded from the Released Claims.

13              **b.      Effectiveness of Distribution Method**

14         The Court must consider "the effectiveness of [the] proposed method of distributing relief

15  to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Class Members who seek a Cash Payment need only

16  submit a relatively simple Claim Form, an election of payment method, and a certification of the

17  information included on the Claim Form. (Settlement Agreement, ¶ 4.5 and Exh. A.) The Claim

18  Form can be completed online, or Class Members have the option to print and mail the Claim

19  Form to the Claim Administrator. (Settlement ¶ 4.3.) Cash Payments will be made by digital dis-

20  tribution or mailed check. This procedure is claimant-friendly, efficient, cost-effective, propor-

21  tional and reasonable. Pursuant to N.D. Cal. Guide ¶1(g), Plaintiffs' Counsel estimates, based on

22  its experiences with recent settlements in other cases and the input of the Claims Administrator,

23  approximately 5% (or approximately 98,950) Class Members will submit a Claim. Safier Decl.

24  ¶ 54; Weisbrot Decl. ¶ 40.

25         Except if the Settlement is terminated pursuant to Paragraphs 7.13 and 7.15 of the Agree-

26  ment, no portion of the Settlement Amount will revert to Defendant. After distributions of Cash

27  Payments, Notice and Administration Expenses, Attorneys' Fees and Expenses, and Incentive

28

-12-

REDACTED

Awards, any money that remains shall be paid to a *cy pres* recipient, National Advertising Division ("NAD"). Settlement ¶ 4.4.

"NAD holds national advertising across all media types to high standards of truth and accuracy by reviewing truth-in-advertising challenges from businesses, trade associations, consumers, or on its own initiative." *See* https://bbbprograms.org/programs/all-programs/national-advertising-division. An award to this cy pres recipient, if one results from the Settlement, would be guided by "(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," and would not benefit a group too remote from the Class. *See Flores v. TFI Int'l, Inc.*, No. 12-cv-05790-JST, 2019 U.S. Dist. LEXIS 65754, at *24-25 (N.D. Cal. Apr. 17, 2019).

### c.  Terms of Attorneys' Fees

Plaintiffs' Counsel seeks an award of attorneys' fees and costs. That request is addressed in Section VIII, *infra*.

### d.  Equitable Treatment of Class Members

All Class Members are entitled to the same relief under the Settlement. Even though Products may have been sold at different prices based on size or retail location, the alleged premium is always 11%, and uniform relief makes it unnecessary for claimants to attest to how much they paid for each purchase and makes the Settlement administratively efficient. The Settlement also provides for an Incentive Award for the Plaintiffs, which is explained in Section F, *infra*.

### e.  Counsel's Experience

Although not articulated as a separate factor in Rule 23(e), courts have given considerable weight to the opinion of experienced and informed counsel who support settlement. *See DIRECTV*, 221 F.R.D. at 528; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA, 2008 U.S. Dist. LEXIS 117351 at *4 (N.D. Cal. Dec. 22, 2008); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Stewart v. Applied Materials, Inc.*, No. 15-cv-02632-JST, 2017 U.S. Dist. LEXIS 137130 at *6 (N.D. Cal. Aug. 25, 2017); *accord Omnivision*, 559 F. Supp. 2d at 1043 (same).

REDACTED

Deference to Class Counsel's evaluation of the Settlement is proper because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* Safier Decl. ¶ 18, and Ex. 2, Ex. 4; Sheehan Decl., ¶ 5, and Ex. 1; and Wright Decl. ¶ 5, and Ex. 1. Based on their experience, Plaintiffs' counsel concluded that the Settlement provides exceptional results for the Class while sparing the Class from the uncertainties of continued and protracted litigation. Defendant is also represented by seasoned, class-action litigators who support the settlement. Safier Decl. ¶ 19.

### f.     Past Distributions

The information requested by N.D. Cal. Guide ¶ 11 regarding past distributions in other comparable class settlements is provided in the Safier Declaration. Safier Decl. ¶ 54 and Ex. 4.

## V.     THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence. *Hanlon*, 150 F.3d at 1019. When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. In assessing those class certification requirements, a court may consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). For the reasons below, the proposed Settlement Class meets the requirements of Rule 23(a) and (b).

The Class consists of all United States residents who purchased any Vizzy hard seltzer beverages from January 1, 2020 to present. Settlement ¶ 2.54. Excluded persons are (1) the Honorable Judge William Orrick, the Honorable Iain D. Johnston, the Honorable Lisa Jensen, the Honorable William P. Dimitrouleas, the Honorable Jay Gandhi (Ret.), and any member of their immediate families; (2) any government entity; (3) Defendant; (4) any entity in which Defendant

REDACTED

has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opt-out of the Settlement Class. Under the Settlement Agreement, Class Members (except any such Person who has filed a proper and timely request for exclusion from the Class), will agree to release all Allegations, Claims, or contentions related to the Released Claims. *Id.* ¶ 2.19.

When a class settlement occurs before class certification has taken place, a court may conditionally certify an action for settlement purposes. *See In re Wireless*, 253 F.R.D. 630, 633 (S.D. Cal. 2008) ("parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes"). When certification is sought under Rule 23(a) and (b)(3), the Court's threshold task is to preliminarily determine whether the proposed settlement class satisfies the numerosity, commonality, typicality and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3). *Id.* Here, the parties seek approval, for settlement purposes only, of a nationwide Settlement Class so that relief can be afforded to all consumers. All of the class certification elements are met here.

Numerosity is satisfied because ██████████████ were sold to the Settlement Class (Safier Decl. ¶ 23) and "joinder of all members is impracticable." Rule 23(a)(1); *see Canada Dry*, 326 F.R.D. at 607 ("[I]t is clear that the class is sufficiently numerous. Dr. Pepper sold millions of units of Canada Dry during the class period.").

Typicality under Rule 23(a)(3) is a "permissive" standard that requires only that the representatives' claims be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). There is only one labeling statement at issue that is identical across all Products. Plaintiffs are typical because they were deceived as a result of Defendant's unlawful and misleading labeling of the Products and therefore suffered the same injury as the rest of the Class.

Adequacy under Rule 23(a)(4) concerns whether the class representatives will "fairly and adequately protect the interests of the class." This inquiry involves two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the

REDACTED

class?" *Hanlon*, 150 F.3d at 1020. Both requirements are met here. All of Plaintiffs' interests are in line with the interests of the Class because they seek the same relief as the Class, based upon the same claims and uniform business practices. Plaintiffs have also vigorously prosecuted this action, as shown by their retention of experienced, competent counsel, production of documents and responses to interrogatories, and Plaintiffs' participation in the negotiation of the Settlement. Plaintiffs also assumed the risk of bearing Defendant's costs should the litigation have ultimately been unsuccessful. Safier Decl. ¶ 52.

Plaintiffs' Counsel is competent and qualified to represent the Class. Plaintiffs' Counsel has extensive experience with complex class actions, having served as Plaintiffs' Counsel in numerous federal and state court consumer fraud actions that have resulted in millions of dollars being returned to consumers. *Id.* ¶ 18 and Exs. 2, 4; Sheehan Decl. ¶ 5 and Ex. 1; Wright Decl. ¶ 5 and Ex. 1. Numerous courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel, including many in this District. *Id.*

Commonality under Rule 23(a)(2) is established if plaintiff's and class members' claims "depend on a common contention…capable of class-wide resolution . . . meaning that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Because the commonality requirement may be satisfied by a single common issue, it is easily met. 1 NEWBERG ON CLASS ACTIONS § 3.10, at 3-50 (1992). Here, that "common question" is: was Defendant's "with antioxidant vitamin C from acerola superfruit" label likely to deceive reasonable consumers?"

Under Rule 23(b)(3), the question becomes whether "common questions predominate over individual ones." *Id.* at 611. Here, there are numerous common questions, all of which predominate over any individualized issues, including: (1) whether Defendant's marketing and advertising materials were likely to deceive reasonable consumers, (2) whether Defendant's Labeling was unlawful; (3) the amount of the price premium associated with the misleading Labeling; (3) whether Class Members are entitled to injunctive and other equitable relief and, if so, what is the nature of

-16-

REDACTED

such relief; and (4) whether Class Members are entitled to payment of actual, incidental, conse-

quential, exemplary and/or statutory damages plus interest thereon. Defendant sold the same

Products nationwide with the same Labeling, using the same manufacturing and distribution prac-

tices. Regardless of the state, Plaintiffs allege that the "with antioxidant vitamin C from acerola

superfruit" statement is unlawful and misleading. Accordingly, this claim will present uniform

issues of material fact for Class Members nationwide, including whether the Labeling was likely

to deceive, whether it was material to reasonable consumers, and whether a price premium can be

demonstrated using the conjoint damages model.

Finally, Rule 23(b)(3)'s superiority analysis essentially looks to alternative methods of adju-

dication and whether maintenance of a class action would be fair and efficient. *See Valentino v*

*Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir 1996); 2 Newberg at § 4.27. Superiority is sat-

isfied in the present case because: (1) prosecuting or defending separate actions at this stage

would be impractical and inefficient; and (2) to the parties' knowledge, there is no other litigation

concerning this controversy. *See* Fed. R. Civ. Proc., Rule 23(b)(3). Here, there are a multitude of

consumers who were injured in small amounts. This "small individual damages" factor is signifi-

cant and weighs heavily in favor of class certification, especially given the common scheme at

issue. *See Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2010 U.S. Dist. LEXIS 26913, at *36

(N.D. Cal. Mar. 5, 2010); *see also Canada Dry*, 326 F.R.D. at 616 (finding class action mecha-

nism superior to resolve claims).

## VI.    THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE

The proposed Claim Form and Notice Plan, which are attached to the Settlement as Exhib-

its A and B, comport with the procedural and substantive requirements of Rule 23 and the N.D.

Cal. Guide. Under Rule 23, due process requires that Class Members receive notice of the Settle-

ment using the best notice that is "practicable under the circumstances." *See* Fed. R. Civ. P.

23(c)(2)(B). The mechanics of the notice process are left to the discretion of the Court, subject

only to the broad "reasonableness" standards imposed by due process. *See* 7A Wright & Miller,

FEDERAL PRACTICE & PROCEDURE § 1786 (3d ed. 2008)*; see also Rosenburg v. I.B.M.*, No. CV-

REDACTED

06-00430-PJH, 2007 U.S. Dist. LEXIS 53138 at *5 (N.D. Cal. July 12, 2007) (notice should inform class members of essential terms of settlement including claims procedure and their rights to accept, object or opt-out of settlement); N.D. Cal. Guide ¶¶ 3-5 (identifying information to be included in notice). In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No.1*, 623 F.3d 1338, 1352 (9th Cir. 1980)). The proposed Notice Plan satisfies these content requirements and is designed to reach a high percentage of the Class.

Notice of the Settlement is to be provided to the Class as follows: (1) published notice in People Magazine and USA Today (California Regional edition); (2) online notice to be published on internet sites through an appropriate programmatic network, social media, and a paid search campaign for a total of at least 5.2 million combined impressions; (3) published notice issued as a press release through GlobeNewswire (or a similar press release distribution service); and (4) sponsored listings on two leading class action settlement websites (www.topclassactions.com and www.classaction.org), postings by a social media influencer, and active listening on Facebook, Instagram and Twitter. Settlement Agreement. *See* Settlement Agreement Exhibit B.

The proposed notices inform Class Members about the proposed settlement; a summary of settlement benefits; their right to opt out and the information required by N.D. Cal. Guide ¶ 4 regarding opt outs; their right to object and the information required by N.D. Cal. Guide ¶ 5 regarding objections; the opportunity to file a Claim to obtain a Cash Payment; and the prospective request for attorneys' fees, costs and Incentive Awards. The published notices refer Class Members to the Settlement Website where they can obtain the Long Form Notice, which provides more details about the Actions and the Settlement, online and printable versions of the Claim Form and the opt out forms, a fuller discussion of the Released Claims, and methods to obtain additional information. In addition, the Settlement Website will also contain a contact information page that will include address and telephone numbers for the Claim Administrator and Plaintiffs'

REDACTED

Counsel, the Settlement Agreement, the date of the Final Approval hearing, the motion for approval and for attorneys' fees and any other important documents in the case. Further, the Claim Administrator will provide a toll-free telephone number at which Class Members can obtain more information.[4]

As explained in the declaration from the Claim Administrator filed herewith, this multi-communication method is expected to reach at least 80% of the Class Members an estimated average of 3.28 times each, and it is the best notice practicable. *See* Weisbrot Decl. ¶¶ 12-14. *See, e.g.*, *In re Google Referrer Header Privacy Litig.*, No. 5:10-cv-04809, 2014 WL 1266091, *7 (N.D. Cal. Mar. 26, 2014) (where direct individual notice not practical, "publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment"); *see also In re Tableware*, 484 F. Supp. 2d 1078, 1080 (N.D.Cal. 2007) (approving settlement; holding that where defendant does not maintain complete lists of all class members, notice via publication is "reasonable").

The Class Action Fairness Act requires that Defendant give notice of the proposed class action settlement to appropriate state and federal officials and supply all of the information and documents set forth in 28 U.S.C. § 1715 (b)(1)-(8). The Claim Administrator will do so within ten days after the Settlement Agreement is filed with the Court. Settlement ¶ 5.7; Weisbrot Decl. ¶ 39.

## VII.   APPROVAL OF THE CLAIMS ADMINISTRATOR

The Settlement will be administered by a well-known, independent claims administrator, Angeion Group. The additional information required by District Guidelines ¶ 2 regarding the selection of Angeion is provided in the accompanying Safier Declaration (Safier Decl. ¶ 53) and regarding Angeion's data policies and costs is provided in the accompanying Weisbrot Declaration (Weisbrot Decl. ¶¶ 41-46, 51).

## VIII.   APPROVAL OF THE REQUEST FOR ATTORNEYS' FEES AND EXPENSES.[5]

---

[4] Direct notice is not possible because relevant sales occur through third-party retailers and therefore Defendant does not have or maintain records of consumer purchases.

[5] Under the Settlement Agreement, Defendant agreed that it would not oppose Plaintiffs' request for a Fee Award that does not exceed $2,5000,000 provided that the Court grants Final Approval of the settlement. Settlement Agreement ¶ 6.3.

-19-

REDACTED

1    Plaintiff requests the payment of actual expenses in the amount of approximately $70,000

2    and attorneys' fees in the amount of $2,500,000. Under Ninth Circuit standards, it is appropriate

3    for a District Court to analyze an attorneys' fee request and issue an award either based on (1) the

4    "lodestar" method or (2) by making an award as a percentage of the total benefit made available

5    to the settlement class, including costs, fees, and injunctive relief. *See e.g., Bluetooth Headset*

6    *Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, No. C 09-

7    01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-

8    07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011). Plaintiffs' fee request is

9    reasonable under either of these approaches. Further, an attorney is entitled to "recover as part of

10   the award of attorney's fees those out-of-pocket that would normally be charged to a fee paying

11   client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation

12   omitted). To support an expense award, plaintiffs should file an itemized list of their expenses by

13   category, listing the total amount advanced for each category, allowing the Court to assess

14   whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-

15   JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6.

16         **A.**    **Plaintiffs' Counsel's Requested Fee Is A Reasonable Percentage of the Total**
17                  **Benefit Made Available To the Class.**

18   In the Ninth Circuit, the benchmark for an attorney fee is 25% of the total settlement value.

19   *See Six Mexican Workers v. Arizona Citrus Workers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see*

20   *also Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *14 (N.D. Cal.

21   Jan. 26, 2007) ("The Ninth Circuit has repeatedly held that 25% of the gross settlement amount is

22   the benchmark for attorneys' fees awarded under the percentage method . . ."). Here, Class Coun-

23   sel requests an award of attorneys' fee of $2,500,00, or 26% of the Settlement Amount ($9.5M),

24   which does not include the value of injunctive relief.

25   In awarding fees, Ninth Circuit precedent requires courts to award class counsel fees based

26   on the total benefits being made available to class members rather than the amount actually

27   claimed. *Young v. Polo Retail, LLC*, No, C-02-4546 WRW, 2007 WL 951821, at *8 (N.D. Cal.

28   Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997)

REDACTED

("district court abused its discretion in basing attorney fee award on actual distribution to class"

instead of amount being made available)); *see also Nwabueze*, 2014 WL 324262, at *3 (calculat-

ing overall value of settlement to be $100 million if all class members requested billing summar-

ies provided in settlement); *Glass*, 2007 WL 221862, at *16 ("The Ninth Circuit has held,

however, that the district court must award fees as a percentage of the entire fund, or pursuant to

the lodestar method, not on the basis of the amount of the fund actually claimed by the class.")

(citing *Williams*), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Dennings v. Clearwire Corp.*, No.

C10-1859JLR, 2013 WL 1858797, at *7 (W.D. Wash. May 3, 2013) ("Under Ninth Circuit law,

there is strong support that, when a court conducts a percentage fee analysis, it is the amount or

value made available to the class, not the amount actually claimed, that is relevant.") (citing *Wil-*

*liams* and *Stern v. Gambello*, 480 F. App'x 867, 870 (9th Cir.2012)) aff'd (Sept. 9, 2013)).

### B.     As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also Reasonable When Using The Lodestar Approach.

Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying

the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Ben-*

*eficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085,

1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours

reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily

the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal cita-

tion omitted) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010)). Once the

court has fixed the lodestar, it may increase or decrease that amount by applying a positive or

negative "multiplier to take into account a variety of other factors, including the quality of the

representation, the novelty and complexity of the issues, the results obtained and the contingent

risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest* ("*Serrano III*"), 20 Cal.

3d 25, 48-49 (1977); *Ramos v. Countrywide Home Loans*, Inc. 82 Cal. App. 4th 615, 622 (2000);

*Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1418 (1991) (multipliers are used to com-

pensate counsel for the risk of loss, and to encourage counsel to undertake actions that benefit the

public interest).

REDACTED

1       Plaintiffs' Counsel's lodestar through the date of this motion is approximately

2   $758,746.00. *See* Safier Decl. ¶ 33; Sheehan Decl. ¶¶ 11-12; Wright Decl. ¶ 10. Plaintiffs' Coun-

3   sel's efforts to date included, without limitation: (1) significant pre-filing investigation; (2) draft-

4   ing and filing the class action complaints and amended complaints in three separate Actions;

5   (3) drafting and filing case management conference statements and case management stipulations;

6   (4) drafting discovery requests and responses; (5) meeting-and-conferring with Defendant's coun-

7   sel regarding the scope of discovery, the sufficiency of discovery responses and production, depo-

8   sition notices, Defendant's searches for electronically stored information, the terms and scope of a

9   stipulated protective order, the terms and scope of a stipulated electronically stored information

10  order, and the timing of production; (6) reviewing documents produced by Defendant; (7) con-

11  ducting Defendant's 30(b)(6) deposition; (8) preparing Plaintiffs for depositions; (9) selecting,

12  engaging, and working with a damages expert to prepare and interpret consumer survey results;

13  (10) drafting a mediation statement and participating in two mediation sessions before Hon. Jay

14  Gandhi; (11) negotiating and drafting the Settlement Agreement along with corresponding docu-

15  ments, including the claim form and notice forms; and (12) drafting this motion for approval and

16  supporting documents, including a proposed preliminary approval order and a proposed final

17  judgment. Safier Decl. ¶¶ 5-16. Before the Final Approval Hearing, Plaintiffs' Counsel's efforts

18  will also include, without limitation: (13) reviewing and responding to correspondence from Class

19  Members; (14) supervising the work of the Claims Administrator; (15) researching and drafting a

20  reply memorandum and opposing objections, if any; and (16) appearing at the Preliminary Ap-

21  proval Hearing. *Id.* ¶ 51.

22      Plaintiffs' Counsel calculated their lodestar using their regular billing rates, which for the

23  attorneys involved range from $450 to $1,280 per hour and for the paralegals range from $315 to

24  $3400 per hour. Safier Decl. ¶ 33; Sheehan Decl. ¶¶ 11-12; Wright Decl. ¶ 10. Plaintiffs' Counsel

25  includes graduates of top law schools (including Yale, Harvard, and NYU), and the principal

26

27

28

work was performed by lawyers with 6 or more years of experience.[6] Safier Decl. ¶ 48. "Affidavits of the plaintiff[s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff[s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For attorneys and staff at the GSLLP firm, these hourly rates are equal to or below market rates in San Francisco for attorneys of Plaintiffs' Counsel's background and experience. Safier Decl. ¶¶ 49, Ex. 2. Additionally, the rates charged by Plaintiffs' Counsel have been deemed reasonable in connection with the approval their fee applications in at least twelve recent matters. *Id.* ¶¶ 36-47. Courts in other cases over the past several years have also approved similar fees charged by other firms. *See Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 U.S. Dist. LEXIS 204099, at *24-25 (N.D. Cal. Feb. 4, 2021) (approving rates of $800 and $1,000 for senior attorneys); *In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200); *In re Optical Disk Drive Prod. Antitrust Litig.,* 2016 WL 7364803, at *8 (N.D. Cal. Dec. 19, 2016) (approving hourly rates of $205 to $950); *Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 07-05923 WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (approving hourly rates of $475 to $975).

These rates are the current rates charged by Plaintiffs' Counsel, which is appropriate given the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment….") (citing *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways: (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement.").

---

[6] Some of Plaintiffs' Counsel also previously worked for top defense firms; had they remained at those firms their rates would be even higher than they are currently. Safier Decl. ¶ 49.

The requested fee equates to a 3.29 multiplier, and possibly lower depending on how much work Plaintiffs' Counsel performs prior to (and after) Final Approval. This Court has discretion to apply a multiplier to increase the fee award to account for various factors, including, *inter alia*, the contingent nature of the fee award (both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award), the novelty and complexity of the questions involved, the value of class benefits obtained, the efficiency and skill displayed by class counsel, and the importance of other injunctive relief obtained. *See Serrano III*, 20 Cal. 3d at 49; *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001); *City of Oakland v. Oakland Raiders*, 203 Cal. App. 3d 78, 83 (1988); *Downey Cares v. Downey Community Dev. Comm'n*, 196 Cal. App. 3d 983, 995 n. 11 (1987); *see also Maria P. v. Riles*, 43 Cal. 3d 1281, 1294 n8 (1987); *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 (1983); *Serrano v. Unruh* ("*Serrano IV*"), 32 Cal.3d 621, 625 n6 (1982). Each of these factors justifies a multiplier here.

First, Plaintiffs' Counsel bore considerable risk in litigating this case wholly on a contingent basis and advancing all costs. Safier Decl. ¶¶ 31-32; Sheehan Decl. ¶ 4; Wright Decl. ¶ 4. During the pendency of the Actions, Plaintiffs' Counsel turned away other work. Safier Decl. ¶¶ 31; Sheehan Decl. ¶ 4. Since Plaintiffs' Counsel's work is primarily focused on contingent-fee class action cases, it does not get paid in every case. Frequently, it gets nothing or is awarded fees equal to only a small percentage of the amount it had worked. Where a plaintiff's firm does succeed, therefore, it is appropriate to award a multiplier, to compensate for the risks the firm regularly undertakes. As the California Supreme Court has explained:

> [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.

*Ketchum*, 24 Cal. 4th at 1132-33; *see also Cazares v. Saenz*, 208 Cal. App. 3d 279, 288 (1989) ("in theory, a contingent fee in a case with a 50 percent chance of success should be twice the

REDACTED

1   amount of a non-contingent fee for the same case."). Indeed, in *In re Continental Illinois Securi-*

2   *ties Actions*, 962 F.2d 566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class

3   action for, among other things, the trial court's refusal to enhance class counsel's lodestar for con-

4   tingency risk. It explained, "The judge refused to award a risk multiplier—that is, to give the law-

5   yers more than their ordinary billing rates in order to reflect the risky character of their

6   undertaking. This was error in a case in which the lawyers had no source of compensation for

7   their services." *Id.* at 569. "[T]he failure to make any provision for risk of loss may result in sys-

8   tematic under-compensation of Class Counsel in a class action case, whereas we have said the

9   only fee that counsel can obtain is, in the nature of the case, a contingent one." *Id.*

10       Second, Plaintiffs' Counsel reached a settlement before class certification and thus should

11  be rewarded for its efficiency (and the concomitant savings to the judicial system). In *Lealao*, the

12  Court explained that, unless multipliers are provided when counsel agree to settle early, there will

13  be "a disincentive to settle promptly inherent in the lodestar methodology. Considering that our

14  Supreme Court has placed an extraordinarily high value on settlement, it would seem counsel

15  should be rewarded, not punished, for helping to achieve that goal, as in federal courts." *Lealao*,

16  82 Cal. App. 4th at 52 (citing *Merola v. Atlantic Richfield Company*, 515 F.2d 165, 168 (3d Cir.

17  1975)) (lodestar-multiplier approach "permits the court to recognize and reward achievements of

18  a particularly resourceful attorney who secures a substantial benefit for his clients with a mini-

19  mum of time invested"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio 1996)

20  (awarding a multiplier where case settled "in swift and efficient fashion"); *Arenson v. Board of*

21  *Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of four times

22  the normal hourly rate on ground that, if the case had not settled and gone to verdict, "there is no

23  doubt that the number of hours of lawyer's time expended would be more than quadruple the

24  number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th

25  819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results ob-

26  tained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in less

27  time than would work of average quality, thus justifying a multiplier."

28

Third, as explained above, Plaintiffs' Counsel achieved an excellent settlement in the Actions. Should the Court reduce Plaintiffs' Counsel's lodestar, the multiplier necessary to offset that reduction would fall well within the range commonly applied by California courts. For example, in *Wilson v. Airborne, Inc.*, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008), the court approved a multiplier of 2.0 in a false advertising class action brought on behalf of consumers. *Id.* at *12. Likewise, in *Sternwest Corp. v. Ash*, 183 Cal. App. 3d 74 (1986), the Court of Appeal remanded a case for a lodestar enhancement of "two, three, four or otherwise." *Id.* at 76. Another California court explicitly stated that "[m]ultipliers can range from two to four or even higher." *Wershba v. Apple Comput., Inc.*, 91 Cal. App. 4th 224, 240 (2001*)* (citing *Coalition for L. A. County Planning etc. Interest v. Board of Supervisors*, 76 Cal. App. 3d 241, 251 (1977) (affirming a multiplier of 2) and *Arenson*, 372 F. Supp. at 1358 (affirming a multiplier of 4); *see also City of Oakland*, 203 Cal. App. 3d at 83 (affirming a 2.34 multiplier); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 479-80 (1984) (approving a multiplier of 12); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (granting a multiple of 3.65 and noting that multipliers of one to four are frequently awarded).

Finally, Plaintiffs' Counsel will have to perform more work before the Settlement will become effective, including, communicating with Class Members, supervising the Claim Administrator, responding to objections, and opposing any appeals. Plaintiffs' Counsel anticipates that there will be another 50-75 hours before this Settlement is entirely complete and an estimated 175-250 hours if this Court's judgment is appealed. Safier Decl. ¶ 51. Should the Court award less than the maximum amount of fees, Plaintiffs' Counsel reserves its right to seek additional attorneys' fees for later-performed work in connection with this Settlement, up to a total of no more than $2,500,000 for fees.

**C.     Plaintiffs' Counsel Requests an Award of Its Actual Expenses.**

Plaintiffs' Counsel requests that, in addition to reasonable attorneys' fees, the Court grant its application for reimbursement of approximately $70,000 in out-of-pocket expenses incurred by it in connection with the prosecution of the Actions. Safier Decl. ¶ 50, Ex. 3. Plaintiffs' Counsel is typically entitled to reimbursement of all reasonable out-of-pocket expenses and costs in

REDACTED

1  prosecution of the claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557 F.2d

2  759, 769 (9th Cir. 1977). As required by the District Guidelines ¶ 6, a current accounting of the

3  expenses incurred are itemized in counsel's declaration. Safier Decl. ¶ 50, Ex. 3.

4  **IX.    APPROVAL OF THE INCENTIVE AWARDS.**

5          This Court should also approve the requested Incentive Awards to the Plaintiffs as they

6  are just, fair and reasonable. In deciding whether to approve such an award, a court should con-

7  sider: "(1) the risk to the class representative in commencing suit, both financial and otherwise;

8  (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of

9  time and effort spent by the class representative; (4) the duration of the litigation and; (5) the per-

10  sonal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van*

11  *Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also* District

12  Guidelines ¶ 7. Further, as a matter of public policy, representative service awards are necessary

13  to encourage consumers to formally challenge perceived false advertising and unfair business

14  practices.

15          Jennifer Marek, Isabelle Dwight, Jennifer Gannon, Darren Williams, Evvie Eyzaguirre, the

16  named plaintiffs in the Actions, took on substantial risk, most importantly the risk of publicity

17  and notoriety. Safier Decl. ¶ 52; Sheehan Decl. ¶ 14. They also searched their personal records for

18  responsive documents and communicated many times with counsel. *Id*. They also remained ac-

19  tively involved in the Actions prior to and after settlement. *Id.* The other named Plaintiffs all pro-

20  vided Class Counsel with sufficient information regarding their experiences and claims to enable

21  them to join this case and represent a nationwide class. *Id.* Finally, all the Plaintiffs agreed to a

22  broader general release than the release applicable to the other Settlement Class Members. *See*

23  Settlement ¶ 8.2.

24          The proposed Incentive Awards are reasonable in light of the Plaintiffs' efforts in litigating

25  the Actions and the relief to the Settlement Class resulting from this Settlement. *See* Theodore Ei-

26  senberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study,

27  53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action

28

plaintiffs has determined that the average aggregate incentive award within a consumer class action case is $29,055.20, and that the average individual award is $6,358.80.); *see also In re Mego, Fin. Corp,* 213 F.3d at 463 (awarding the named plaintiff $5,000 involving a class of 5,400 people and a total recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, *6 (S.D. Cal. Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within the range awarded in similar cases); *Embry v. Acer America Corp.*, Case No. 09-cv-01808-JW, Dkt.# 218 (N.D. Cal. Feb. 14, 2012) (awarding $15,000 incentive award); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee); *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059, at *15 (N.D. Cal. Jan 23, 2017) ("$5,000 is presumptively reasonable.") (citations omitted).

## X.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the Final Approval Hearing at which the parties will seek final approval of the proposed Settlement. At the Final Approval Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of final approval of the Settlement. Also, Settlement Class Members, or their counsel, may be heard in support of or in opposition to final approval of the Settlement. Plaintiffs request the Court issue a schedule establishing the Notice Date, submitting timely Claim Forms, exclusions and objections, and for the Final Approval Hearing.

Plaintiffs propose the following schedule:

| Item | Proposed Due Date |
| --- | --- |
| Notice Date | March 10, 2023 |
| Deadline for objections, claims, opt-outs | April 21, 2023 |
| Deadline for Settlement Administrator to file a declaration pursuant to Agreement 5.8 and 5.9 | May 5, 2023 |
| Replies in support of final approval and for attorneys' fees, costs and representative awards; response to objections | May 5, 2023 |
| Final Approval hearing | May 24, 2023 at 2 p.m. |

REDACTED

**XI.    CONCLUSION**

        For the foregoing reasons, Plaintiffs and Plaintiffs' Counsel respectfully request that the Court: (1) grant preliminary approval of the Settlement; (2) conditionally certify the Settlement Class for settlement purposes only, designate the Plaintiffs as Class Representatives, and appoint Gutride Safier LLP, Sheehan and Associates, P.C., and Wright Law Office, P.A. as Class Counsel; (3) appoint Angeion Group as the Settlement Administrator and approve payment of $390,000 to Angeion Group for the estimated costs of the Notice Plan; (4) approve the Notice Plan and the forms of the Long Form Notice, Online Notice, and Published Notice to Class Members; (5) mandate procedures and deadlines for exclusion requests and objections; and (6) set a date, time and place for the Final Approval Hearing.

Dated: January 13, 2023                        **GUTRIDE SAFIER LLP**

                                               */s/ Hayley Reynolds            /*
                                               SETH A. SAFIER (State Bar No. 197427)
                                               MARIE A. MCCRARY (State Bar. No. 262670)
                                               HAYLEY A. REYNOLDS (State Bar No. 306427)
                                               100 Pine Street, Suite 1250
                                               San Francisco, CA 94111
                                               Telephone: (415) 639-9090
                                               Facsimile:  (415) 449-6469

                                               *Counsel for Plaintiffs*