1  **GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
2  MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
3  100 Pine Street, Suite 1250
San Francisco, CA 94111
4  Telephone: (415) 639-9090
Facsimile:  (415) 449-6469
5

6  Attorneys for Plaintiffs

7                 UNITED STATES DISTRICT COURT FOR THE

8                    NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10  JENNIFER MAREK, ISABELLE DWIGHT, DARREN WILLIAMS, JENNIFER GANNON, EVVIE EYZAGUIRRE, BRANDI FIKE, LANCE WALDRON, JESSICA TEMPEST, and VIVIAN NOGUERAS, as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MOLSON COORS BEVERAGE COMPANY USA LLC and MOLSON COORS BEVERAGE COMPANY,<br><br>Defendants. | CASE NO. 21-cv-07174-WHO<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Date: July 12, 2023<br>Time: 2:00 pm<br><br>Hon. William H. Orrick |

--

**TABLE OF CONTENTS**

I.     INTRODUCTION & BACKGROUND ................................................................1

II.    APPROVAL OF THE FEES AND COST AWARDS .............................................2

     A.     Plaintiffs' Counsel's Requested Fee Is A Reasonable Percentage of the
           Total Benefit Made Available To the Class. ...............................................3

          1.     The Settlement Confers Substantial Benefits to the Class ...............3

          2.     Risk of Further Litigation Supports the Fee Request ......................4

          3.     The Skill and Quality of Plaintiffs' Counsel's Work Supports
               Plaintiffs' Fee Request ...................................................................5

          4.     The Contingent Nature of the Fees Supports Granting the Fee
               Request. ..........................................................................................6

          5.     Awards in Similar Cases Support Plaintiffs' Fee Request ...............6

     B.     As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also Reasonable
           When Using The Lodestar Approach .............................................................7

     C.     Plaintiffs' Counsel Requests an Award of Its Actual Expenses. ................11

III.   APPROVAL OF THE INCENTIVE AWARDS. .....................................................11

IV.    CONCLUSION ........................................................................................12

Plfs' Mtn for Attorneys' Fees, Costs, and Incentive Awards – Case No. 21-cv-7174-WHO

## TABLE OF AUTHORITY

**CASES**

*Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) ............................................. 6

*Arenson v. Board of Trade of City of Chicago*, 372 F. Supp. 1349 (N.D. Ill. 1974) .............. 9, 10

*Behrens v. Wometco Enters. Inc.*, 118 F.R.D. 534 (S.D. Fla. 1988) ................................. 9

*Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ...................................... 2

*Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D. Ohio 1996) ........................................... 10

*Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 U.S. Dist.
   LEXIS 204099 (N.D. Cal. Feb. 4, 2021) ..................................................... 8

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 U.S. Dist.
   LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ..................................................... 7

*Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*, 2008 WL 618893
   (C.D. Cal. Feb. 27, 2008) ..................................................... 12

*Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................. 8

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ..................................................... 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................... 4

*In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, 2016
   WL 6663005 (N.D. Cal. Nov. 11, 2016) ..................................................... 8

*In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) ..................................................... 9

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) ........................................... 9

*In re Continental Illinois Securities Actions*, 962 F.2d 566 (7th Cir. 1993) ............................... 9

*In re Mego Financial Corporation Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................... 12

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998) ...................... 9

*In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ............................................. 7

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ................... 8

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ..................................................... 7

Plfs' Mtn for Attorneys' Fees, Costs, and Incentive Awards – Case No. 21-cv-7174-WHO

*Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) ..................................................................9

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
    (N.D. Cal. July 11, 2014) .........................................................................................3

*Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19 (2000)......................................7, 10

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2nd Cir. 1998)..........................................8

*Lopez v. Youngblood*, No. CV-F-07-0474 DLB, 2011 WL 10483569 (E.D. Cal.
    Sept. 2, 2011) ..........................................................................................................2

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................9

*Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059 (N.D.
    Cal. Jan 23, 2017) ...................................................................................................12

*Merola v. Atlantic Richfield Co.*, 515 F.2d 165 (3d Cir. 1975) ....................................................10

*Nwabueze v. AT&T, Inc.*, No. C 09-01529 SI, 2014 WL 324262 (N.D. Cal. Jan. 29,
    2014) ...........................................................................................................................2

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ....................................6

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ...............................................................7

*Rabin v. Concord Assets Group*, No. 89 Civ 6130, 1991 U.S. Dist. LEXIS 18273
    (S.D.N.Y. Dec. 19, 1991)...........................................................................................9

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ....................................................................................7

*Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ......................12

*Thayer v. Wells Fargo Bank*, 92 Cal. App. 4th 819 (2001) ..........................................................10

*United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403 (9th Cir. 1990) .....................8

*Van Vraken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)....................................9, 11

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ...................................6

*Vincent v. Hughes Air West*, 557 F.2d 759 (9th Cir. 1977) .........................................................11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................................................7

*Williams v. MGM Pathe Comms. Corp.*, 129 F.3d 1026 (9th Cir. 1997) ....................................2

*Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826
    (N.D. Cal. Apr. 1, 2011) ...........................................................................................3

**OTHER AUTHORITIES**

*Manual For Complex Litigation* ¶ 21.7 (4th ed. 2004) ............................................................... 2

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
   Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) .................................. 12

Plfs' Mtn for Attorneys' Fees, Costs, and Incentive Awards – Case No. 21-cv-7174-WHO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLEASE TAKE NOTICE that on July 12, 2023 at 2:00 p.m. in the United States District Court for the Northern District of California, before the Honorable William H. Orrick in the San Francisco Courthouse, 450 Golden Gate Avenue, in courtroom 2 on the 17th Floor, Plaintiffs Jennifer Marek, Isabelle Dwight, Darren Williams, Jennifer Gannon, Evvie Eyzaguirre, Brandi Fike, Lance Waldron, Jessica Tempest, and Vivian Nogueras (collectively, "Plaintiffs") will and do move, consistent with the Settlement Agreement filed in the above-entitled action (ECF ## 59-1 and 64), for an award of $2,500,000 in attorneys' fees, an award of $69,298.60 in costs, and incentive awards in the amount of $5,000 each for Plaintiffs Marek, Dwight, Williams, Gannon, and Eyzaguirre and $2,500 each for Plaintiffs Fike, Waldron, Tempest, and Nogueras.

This Motion is supported by the Settlement Agreement (ECF 59-1 and 64); the Memorandum of Points and Authorities in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards; the Declaration of Seth A. Safier in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Safier Decl."); the Declaration of Spencer Sheehan in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Sheehan Decl."); the Declaration of Robert Wright in Support of Plaintiffs' Application for Attorneys' Fees, Costs, and Incentive Awards ("Wright Decl."); and the pleadings and papers on file in this action and any other matter of which this Court may take notice.

Plfs' Mtn for Attorneys' Fees, Costs, and Incentive Awards – Case No. 21-cv-7174-WHO

## I.   INTRODUCTION & BACKGROUND

Plaintiffs and their counsel have not yet received any compensation for their work on the three consolidated cases or for the out-of-pocket expenses they have incurred. They collectively expended hundreds of hours investigating, litigating, and negotiating to reach successful settlement of the cases. This motion is submitted pursuant to the Court's Order (ECF 66) to apply for an award of attorneys' fees, costs, and an incentive award as provided in the Settlement Agreement. The amounts will be paid out of the settlement common fund.

In this suit, Plaintiffs alleged that Defendant's labeling of its Vizzy hard seltzer products (the "Products") with the claim "with antioxidant vitamin C from acerola superfruit" was both unlawful and misleading. Plaintiffs alleged that the claim was unlawful because it violated the FDA's Fortification Policy. Plaintiffs alleged that the claim was separately misleading because reasonable consumers would believe that they will receive health benefits from the Product based on the "with antioxidant vitamin C from acerola superfruit" claim, but that consumers will not receive any such benefits. As further explained in Plaintiffs' briefing in support of settlement approval (ECF 58), the settlement confers significant benefits on all U.S. purchasers of Defendant's "Vizzy" hard seltzer beverages ("Products"), excluding resale purchasers, and achieves the outcomes sought in the litigation.  The settlement reflects that:

- Defendant will no longer use the phrase "with antioxidant vitamin C from acerola superfruit" in any Labeling, Primary Packaging, or Secondary Packaging of any Product.

- Defendant agreed to create a non-reversionary Settlement Fund of $9,500,000 against which Class Members may file a Claim to receive a Cash Payment of up to the following: five dollars ($5) per 24-pack Unit of the Product purchased; three dollars ($3.00) per 12-pack Unit of the Product purchased; and seventy-five cents ($0.75) per Single Can Unit of the Product purchased. All Class Members that submit a Valid Claim are entitled to a Minimum Cash Payment of $6.00.

- If a Class Member does not provide Proof of Purchase, the Class Member can claim a maximum Cash Payment of $15.00 per Household.

-1-

1    As provided in the Settlement Agreement, Plaintiffs request payment from the Settlement

2 Fund of Incentive Awards of $5,000 each for Plaintiffs Marek, Dwight, Williams, Gannon, and

3 Eyzaguirre and $2,500 each for Plaintiffs Fike, Waldron, Tempest, and Nogueras. (ECF 59-1 at

4 ¶ 6.2.) The Incentive Awards are designed to compensate Plaintiffs for (1) the time and risk they

5 took in prosecuting this action (including the risk of liability for Defendant's costs and for

6 negative attention from the press and on social media) and (2) agreeing to a release broader than

7 the one that will bind settlement class members. (*Id.*)

8    Plaintiffs also request payment from the Settlement Fund of their out of pocket expenses

9 (approximately $70,000) plus attorneys' fees in the amount of $2,500,000, which represents

10 approximately 26% of the common fund. (*Id.* ¶ 6.1.1) The Parties negotiated these provisions of

11 the Settlement Agreement only after negotiating and reaching an agreement as to all the other

12 material terms. Such an approach is endorsed by the *Manual For Complex Litigation*.  *See*

13 *Manual For Complex Litigation* ¶ 21.7 (4th ed. 2004) ("Separate negotiation of the class

14 settlement before an agreement on fees is generally preferable."). This request is in line with

15 standard awards under other common fund settlements that award fees as a percentage of the

16 fund, as set out in *Williams v. MGM Pathe Communications Corp.*, 129 F.3d 1026 (9th Cir.

17 1997). As discussed herein, the request is also reasonable under a lodestar-multiplier cross-check.

18 The resulting settlement is the product of a non-collusive, adversarial negotiation in light of the

19 work devoted by Class Counsel under California law. Class Counsel's corresponding request for

20 fees and costs is fair, just and reasonable under California law and should be granted.

21 **II.    APPROVAL OF THE FEES AND COST AWARDS**

22    Under Ninth Circuit standards, a District Court may analyze and issue an attorneys' fee

23 award: (1) as a percentage of the total benefit made available to the settlement class, including

24 costs, fees, and injunctive relief; or (2) under the "lodestar" method. *See e.g., Bluetooth Headset*

25 *Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Nwabueze v. AT&T, Inc.*, No. C 09-

26 01529 SI, 2014 WL 324262, at *2-3 (N.D. Cal. Jan. 29, 2014); *Lopez v. Youngblood*, No. CV-F-

27 07-0474 DLB, 2011 WL 10483569, at *11-12 (E.D. Cal. Sept. 2, 2011). Plaintiffs' fee request is

28 reasonable under either of these approaches. Further, an attorney is entitled to "recover as part of

-2-

Plfs' Mtn for Attorneys' Fees, Costs, and Incentive Awards – Case No. 21-cv-7174-WHO

1 the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee

2 paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and

3 citation omitted). To support an expense award, plaintiffs should file an itemized list of their ex-

4 penses by category, listing the total amount advanced for each category, allowing the Court to as-

5 sess whether the expenses are reasonable. *See Wren v. RGIS Inventory Specialists*, No. 06-cv-

6 05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6. Plaintiffs

7 have done that here. *See* Safier Decl. ¶ 41, Ex. 2.

8        Plaintiffs request an award of $2,500,000 for fees and an award of $69,298.60 for costs.

9 The fee amount represents approximately 26% of the $9,500,000 common fund, and a multiplier

10 of Class Counsel's lodestar of approximately 2.9. Both the percentage method and lodestar

11 method require examination of (1) the results achieved; (2) the risk of litigation; (3) the skill re-

12 quired and the quality of work; (4) the contingent nature of the fee and the financial burden car-

13 ried by the plaintiffs; and (5) awards made in similar cases. *Larsen v. Trader Joe's Co.*, No. 11-

14 cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538, at *28-29 (N.D. Cal. July 11, 2014). Each of the

15 relevant factors supports Plaintiffs' request. For the reasons explained below, Plaintiffs' request

16 for fees is reasonable and should be awarded.

17        **A.      Plaintiffs' Counsel's Requested Fee Is A Reasonable Percentage of the
                      Total Benefit Made Available To the Class.**

18

19                  **1.   The Settlement Confers Substantial Benefits to the Class**

20        The results achieved in the Settlement represent substantial benefits for the class, both

21 through monetary and non-monetary benefits. Under the proposed Settlement, Defendant has

22 agreed to a permanent nationwide injunction, prohibiting Defendant's use of the phrase "with an-

23 tioxidant vitamin C from acerola superfruit" and any other claim referencing antioxidants proxi-

24 mate to a reference to vitamin C on the Products, while still permitting Defendant to include

25 acerola cherry as an ingredient in the Product, list "acerola cherry" on the Product Label, and to

26 disclose the vitamin C content in the nutrition facts panel.[1]

---

27 [1] The Court "need not determine the 'value' of particular injunctive relief." *In re Ferrero Litig.*,
583 F. App'x 665, 668 (9th Cir. 2014); *see also Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918,

28 924 (9th Cir.), vacated on other grounds, 772 F.3d 608 (9th Cir. 2014). However, even where the

1    Defendant has also agreed to create a Settlement Fund of $9,500,000 from which con-

2  sumers who submit Valid Claims can receive a Cash Payment up to the following: five dollars

3  ($5) per 24-pack Unit of the Product purchased; three dollars ($3.00) per 12-pack Unit of the

4  Product purchased; and seventy-five cents ($0.75) per Single Can Unit of the Product purchased.

5  The Minimum Cash Payment to any Settlement Class Member who submits a Valid Claim is

6  $6.00 per Household. Settlement Class Members who do not provide Proof of Purchase may ob-

7  tain a maximum Cash Payment of fifteen dollars ($15.00).

8    Plaintiffs' expert opined the price premium associated with the claim is 11%. (Safier Decl.

9  ¶ 16.) Thus, the Cash Payment for Valid Claims exceeds, on a per-Unit basis, the payments that

10 the Class would be awarded if Plaintiffs were successful at trial: a Settlement Class Member who

11 purchased one 12-pack Unit at $16.99 would be eligible for only $1.87, but under the Settlement

12 the same individual will receive $6.00 (the Minimum Cash Payment). Moreover, even if Plaintiffs

13 won at trial, Class Members would still need to file claims in order to receive compensation as

14 Defendant does not have records of individual purchases, and the overall recovery would likely

15 be lower. Thus, the "most critical factor" in analyzing a fee award, i.e., the benefits for the class,

16 supports Plaintiffs' request of approximately 26% of the settlement fund. *Hensley v. Eckerhart*,

17 461 U.S. 424, 436 (1983).

18                **2.   Risk of Further Litigation Supports the Fee Request**

19    In order to prevail at trial, Plaintiffs would have to prove that Defendant's labeling and ad-

20 vertisements were unlawful and misleading; that consumers relied on the misrepresentations; the

21 representations caused injuries; and that there were recoverable damages or restitution for the

22 Class. Defendant also would likely oppose class certification. Although Plaintiffs believe the evi-

23 dence obtained in discovery established the prerequisites for certification as well as Defendant's

24 liability and damages, Defendant vigorously denies those allegations. Among other things, De-

25 fendant was prepared to argue that its labeling advertising was truthful and not misleading to a

26

27

28 value of the injunctive relief cannot be "accurately ascertained," the district court still "should
   consider the value of the injunctive relief as a 'relevant circumstance'" in its fee determination.
   *Staton*, 327 F.3d at 974 (quoting *Vizcaino*, 290 F.3d at 1049).

-4-

reasonable consumer, and that applicable federal regulations did not prohibit labeling of the Prod-

ucts in the way it did. Further, Plaintiffs faced challenges in certifying a class and, if a class or

classes were certified, establishing the amount of class-wide damages. Moreover, even if Plain-

tiffs prevailed at trial, any recovery could be delayed for years by an appeal. Thus, the risk of pro-

tracted litigation supports Plaintiffs' fee request.

### 3.   The Skill and Quality of Plaintiffs' Counsel's Work Supports Plaintiffs' Fee Request

Plaintiffs' Counsel are experienced litigators whose skill and quality of work led to signifi-

cant benefits for the Settlement Class. Plaintiffs won a motion to dismiss, which included Defend-

ant's challenge to Plaintiff's application of complex FDA regulations in a first-of-its-kind

application to alcoholic beverages. *See* ECF 34 at 9-11.  Beyond Plaintiff's Counsel's skillful ap-

plication of the law, Counsel's efforts to date included, without limitation: (1) significant pre-fil-

ing investigation; (2) drafting and filing the class action complaints and amended complaints in

three separate Actions; (3) drafting and filing an opposition to Defendant's motion to dismiss; (4)

drafting and filing case management conference statements and case management stipulations;

(5) drafting discovery requests and responses; (6) meeting-and-conferring with Defendant's coun-

sel regarding discovery matters, including the scope of discovery, the sufficiency of discovery re-

sponses and production, deposition notices, electronically stored information, the terms and scope

of a stipulated protective order, the terms and scope of a stipulated electronically stored infor-

mation order, and the timing of production; (7) reviewing documents produced by Defendant;

(8) conducting Defendant's 30(b)(6) deposition; (9) preparing Plaintiffs for depositions; (10) se-

lecting, engaging, and working with a damages expert to prepare and interpret consumer survey

results; (11) drafting a mediation statement and participating in two mediation sessions before

Hon. Jay Gandhi; (12) negotiating and drafting the Settlement Agreement along with correspond-

ing documents, including the claim form and notice forms; (13) drafting and filing the motion for

approval and supporting documents, including a proposed preliminary approval order and a pro-

posed final judgment; (14) ensuring the efficient and complete claims process by engaging

closely with the Claim Administrator; and (15) drafting and filing this motion for attorneys' fees,

costs, and incentive awards. Safier Decl. ¶¶ 5-18. Plaintiffs' Counsel experience and skill signifi-

cantly contributed to the outcome of this litigation and supports Plaintiffs' fee request.

### 4. The Contingent Nature of the Fees Supports Granting the Fee Request.

"Courts have recognized that the public interest is served by rewarding attorneys who as-

sume representation on a contingent basis with an enhanced fee to compensate them for the risk

that they might be paid nothing for their work." *Larsen*, 2014 U.S. Dist. LEXIS 95538, at *30.

Plaintiffs' Counsel bore considerable risk in litigating this case wholly on a contingent basis and

advancing all costs. Safier Decl. ¶¶ 22-23; Sheehan Decl. ¶ 3; Wright Decl. ¶ 4. During the pen-

dency of the Actions, Plaintiffs' Counsel turned away other work. Safier Decl. ¶ 22; Sheehan

Decl. ¶ 3. Since Plaintiffs' Counsel's work is primarily focused on contingent-fee class action

cases, it does not get paid in every case. Sometimes, it gets nothing or is awarded fees equal to

only a small percentage of the amount it had worked. Here, Plaintiffs' Counsel expended nearly

850 hours litigating this case over the past two years on a contingent-basis, with no guarantee of

compensation. Thus, this factor supports Plaintiffs' fee request.

### 5. Awards in Similar Cases Support Plaintiffs' Fee Request

In the Ninth Circuit, the benchmark for an attorney fee award is 20 to 30% of the total set-

tlement value. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)

("ordinarily…fee awards range from 20 percent to 30 percent of the fund created"); *In re Ac-

tivision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (setting 30 percent as fee for all fu-

ture class action common-fund cases in that court); *Johnson v. Gen. Mills, Inc.*, 2013 WL

3213832, at *6 (C.D. Cal. June 17, 2013) (awarding a fee award of 30% of the settlement fund).

Here, Class Counsel requests an award of attorneys' fee and cost award of $2,500,00, or 26% of

the common fund ($9.5M), which does not include the value of injunctive relief obtained.

This Court has approved fee awards of higher than 26% in similar cases. *See, e.g., Larsen*,

2014 U.S. Dist. LEXIS 95538, at *30 (approving fee request of 28% in food labeling class ac-

tion). Indeed, 26% is well within the range of what is commonly awarded in class actions. *See

Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (noting that "[t]he

1   typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total set-

2   tlement value"); *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming

3   fee award equal to 33% of fund); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW,

4   2010 U.S. Dist. LEXIS 49482, at *2 (N.D. Cal. Apr. 22, 2010) (awarding fee of 30%); *In re Ac-*

5   *tivision Sec. Litig.*, 723 F.Supp. at 1375 (32.8% fee); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

6   1047 (9th Cir. 2002) (28% fee award). Thus, the fifth factor also weighs in favor of Plaintiffs' fee

7   request.

8   **B.      As a Cross-Check, Plaintiffs' Counsel's Requested Fee Is Also Reason-
          able When Using The Lodestar Approach.**

9   Under the lodestar approach, "[t]he lodestar (or touchstone) is produced by multiplying

10   the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Ben-*

11   *eficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000); *see also Kelly v. Wengler*, 822 F.3d 1085,

12   1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours

13   reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily

14   the 'prevailing market rate [] in the relevant community.'") (alteration in original) (internal cita-

15   tion omitted) (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 551 (2010)). Once the

16   court has fixed the lodestar, it may increase or decrease that amount by applying a positive or

17   negative "multiplier to take into account a variety of other factors, including the quality of the

18   representation, the novelty and complexity of the issues, the results obtained and the contingent

19   risk presented." *Lealao*, 82 Cal. App. 4th at 26; *see also Serrano v. Priest* ("*Serrano III*"), 20 Cal.

20   3d 25, 48-49 (1977); "Where, as here, the lodestar is being used as a cross-check, courts may do a

21   rough calculation 'with a less exhaustive cataloging and review of counsel's hours.'" *McShan v.*

22   *Hotel Valencia Corp.*, No. 19-cv-03316-LHK, 2021 U.S. Dist. LEXIS 69558, at *4 (N.D. Cal.

23   Apr. 9, 2021)

24   Plaintiffs' Counsel's lodestar through the date of this motion is approximately

25   $852,018.00. *See* Safier Decl. ¶ 24 ($778,113.00); Sheehan Decl. ¶¶ 10-11 ($63,105.00); Wright

26   Decl. ¶ 10 ($10,800.00). Plaintiffs' Counsel calculated their lodestar using their regular billing

27   rates, which for the attorneys involved range from $450 to $1,280 per hour and for the paralegals

28   range from $315 to $400 per hour. Safier Decl. ¶ 24; Sheehan Decl. ¶¶ 10-11; Wright Decl. ¶ 10.

-7-

1   Plaintiffs' Counsel includes graduates of top law schools (including Yale, Harvard, and NYU),

2   and the principal work was performed by lawyers with 8 or more years of experience.[2] Safier

3   Decl. ¶ 39; Ex. 1. "Affidavits of the plaintiff'[s] attorney and other attorneys regarding prevailing

4   fees in the community, and rate determinations in other cases, particularly those setting a rate for

5   the plaintiff'[s] attorney, are satisfactory evidence of the prevailing market rate." *United Steel-*

6   *workers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). For attorneys and staff

7   at the GSLLP firm, these hourly rates are equal to or below market rates in San Francisco for at-

8   torneys of Plaintiffs' Counsel's background and experience. Safier Decl. ¶¶ 27-38. Additionally,

9   the rates charged by Plaintiffs' Counsel have been deemed reasonable in connection with the ap-

10  proval of their fee applications in at least twelve recent matters. *Id*. Courts in other cases over the

11  past several years have also approved similar fees charged by other firms. *See Elder v. Hilton*

12  *Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 U.S. Dist. LEXIS 204099, at *24-25

13  (N.D. Cal. Feb. 4, 2021) (approving rates of $800 and $1,000 for senior attorneys); *In re Anima-*

14  *tion Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, 2016 WL 6663005, at *6 (N.D.

15  Cal. Nov. 11, 2016) (approving hourly rates of senior attorneys of between $845 and $1,200);

16  *Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 07-05923 WHA, 2015 WL 2438274, at *5 (N.D.

17  Cal. May 21, 2015) (approving hourly rates of $475 to $975).

18          These rates are the current rates Plaintiffs' Counsel charges, which is appropriate given

19  the deferred and contingent nature of counsel's compensation. *See LeBlanc-Sternberg v. Fletcher*,

20  143 F.3d 748, 764 (2nd Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied

21  in order to compensate for the delay in payment….") (citing *Missouri v. Jenkins*, 491 U.S. 274,

22  283-84 (1989)); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th

23  Cir. 1994) ("The district court has discretion to compensate delay in payment in one of two ways:

24  (1) by applying the attorneys' current rates to all hours billed during the course of litigation; or (2)

25  by using the attorneys' historical rates and adding a prime rate enhancement.").

26

27

28  [2] Some of Plaintiffs' Counsel also previously worked for top defense firms; had they remained at
    those firms their rates would be even higher than they are currently. Safier Decl. ¶ 49.

-8-

1   The requested fee equates to a 2.9 multiplier, and possibly lower depending on how much

2   work Plaintiffs' Counsel performs prior to (and after) Final Approval. A multiplier of 2.9 falls

3   well within the range commonly awarded by courts. *Vizcaino*, 290 F.3d at 1051 n.6 (granting a

4   multiple of 3.65 and noting that multipliers of one to four are frequently awarded); *Maley v. Del*

5   *Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); *In re NASDAQ*

6   *Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier: "In recent

7   years multipliers of between 3 and 4.5 have become common."); *In re RJR Nabisco Sec. Litig.*,

8   MDL No. 818, 1992 U.S. Dist. LEXIS 12702, at *15-*23, (S.D.N.Y. Aug. 24, 1992) (6.0 multi-

9   plier); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999) (2.5 multiplier); *In*

10  *re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (3.0 multiplier); *Van Vraken v. Atl.*

11  *Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (3.6 multiplier); *Rabin v. Concord Assets*

12  *Group*, No. 89 Civ 6130, 1991 U.S. Dist. LEXIS 18273, at *2, (S.D.N.Y. Dec. 19, 1991) (4.4

13  multiplier: "multipliers of between 3 and 4.5 have been common"); *Behrens v. Wometco Enters.*

14  *Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988) ("[T]he range of lodestar multipliers in large and com-

15  plicated class actions runs from a low of 2.26 to a high of 4.5."); *In re Cenco, Inc. Sec. Litig.*, 519

16  F. Supp. 322, 327 (N.D. Ill. 1981) (4.0 multiplier); *Arenson v. Bd. of Trade*, 372 F. Supp. 1349,

17  1359 (N.D. Ill. 1974) (4.0 multiplier).

18  Further, where a plaintiff's firm succeeds, it is appropriate to award a multiplier, to com-

19  pensate for the risks the firm regularly undertakes. As the California Supreme Court has ex-

20  plained:

21  [a] contingent fee must be higher than a fee for the same legal services paid as they
    are performed. The contingent fee compensates the lawyer not only for the legal ser-

22  vices he renders but for the loan of those services. The implicit interest rate on such
    a loan is higher because the risk of default (the loss of the case, which cancels the

23  debt of the client to the lawyer) is much higher than that of conventional loans. A
    lawyer who both bears the risk of not being paid and provides legal services is not

24  receiving the fair market value of his work if he is paid only for the second of these
    functions. If he is paid no more, competent counsel will be reluctant to accept fee

25  award cases.

26  *Ketchum*, 24 Cal. 4th at 1132-33. Indeed, in *In re Continental Illinois Securities Actions*, 962 F.2d

27  566 (7th Cir. 1993), a federal appellate court reversed a fee award in a class action for, among

28  other things, the trial court's refusal to enhance class counsel's lodestar for contingency risk. It

1    explained, "The judge refused to award a risk multiplier—that is, to give the lawyers more than

2    their ordinary billing rates in order to reflect the risky character of their undertaking. This was er-

3    ror in a case in which the lawyers had no source of compensation for their services." *Id.* at 569.

4    "[T]he failure to make any provision for risk of loss may result in systematic under-compensation

5    of Class Counsel in a class action case, whereas we have said the only fee that counsel can obtain

6    is, in the nature of the case, a contingent one." *Id.*

7            Additionally, Plaintiffs' Counsel reached a settlement before class certification and thus

8    should be rewarded for their efficiency (and the concomitant savings to the judicial system). In

9    *Lealao*, the Court explained that, unless multipliers are provided when counsel agree to settle

10   early, there will be "a disincentive to settle promptly inherent in the lodestar methodology. Con-

11   sidering that our Supreme Court has placed an extraordinarily high value on settlement, it would

12   seem counsel should be rewarded, not punished, for helping to achieve that goal, as in federal

13   courts." *Lealao*, 82 Cal. App. 4th at 52 (citing *Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 168

14   (3d Cir. 1975) (lodestar-multiplier approach "permits the court to recognize and reward achieve-

15   ments of a particularly resourceful attorney who secures a substantial benefit for his clients with a

16   minimum of time invested"); *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1282-1283 (S.D. Ohio

17   1996) (awarding a multiplier where case settled "in swift and efficient fashion"); *Arenson v.*

18   *Board of Trade of City of Chicago*, 372 F. Supp. 1349, 1358 (N.D. Ill. 1974) (awarding a fee of

19   four times the normal hourly rate on ground that, if the case had not settled and gone to verdict,

20   "there is no doubt that the number of hours of lawyer's time expended would be more than quad-

21   ruple the number of hours expended to date"). Similarly, in *Thayer v. Wells Fargo Bank*, 92 Cal.

22   App. 4th 819 (2001), the Court noted that "[t]he California cases appear to incorporate the 'results

23   obtained' factor into the 'quality' factor: i.e., high-quality work may produce greater results in

24   less time than would work of average quality, thus justifying a multiplier." *Id.* at 838.

25          Finally, Plaintiffs' Counsel will perform more work before the Settlement becomes effec-

26   tive, including, communicating with Class Members, supervising the Claim Administrator, re-

27   sponding to objections, and opposing any appeals. Plaintiffs' Counsel anticipates another working

28   an additional 50-75 hours before this Settlement is entirely complete and an estimated 175-250

1   hours if this Court's judgment is appealed. Safier Decl. ¶ 18. Should the Court award less than the

2   maximum amount of fees, Plaintiffs' Counsel reserves its right to seek additional attorneys' fees

3   for later-performed work in connection with this Settlement, up to a total of no more than

4   $2,500,000 for fees. Thus, Plaintiffs' requested fees are reasonable and merited under the lodestar

5   cross-check.

6   **C.      Plaintiffs' Counsel Requests an Award of Its Actual Expenses.**

7         Plaintiffs' Counsel requests that, in addition to reasonable attorneys' fees, the Court grant

8   its application to reimburse $69,298.60 in out-of-pocket expenses that it incurred in connection

9   with the prosecution of the Actions. Safier Decl. ¶ 41, Ex. 2. Plaintiffs' Counsel is typically enti-

10  tled to reimbursement of all reasonable out-of-pocket expenses and costs in prosecution of the

11  claims and in obtaining a settlement. *See Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir.

12  1977). As required by the District Guidelines ¶ 6, a current accounting of the expenses incurred

13  are itemized in counsel's declaration. Safier Decl. ¶ 41, Ex. 2.

14  **III.    APPROVAL OF THE INCENTIVE AWARDS.**

15        This Court should also approve the requested Incentive Awards to the Plaintiffs as they

16  are just, fair and reasonable. In deciding whether to approve such an award, a court should con-

17  sider: "(1) the risk to the class representative in commencing suit, both financial and otherwise;

18  (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of

19  time and effort spent by the class representative; (4) the duration of the litigation and; (5) the per-

20  sonal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van*

21  *Vranken*, 901 F. Supp. at 299; *see also* District Guidelines ¶ 7. Further, as a matter of public pol-

22  icy, representative service awards are necessary to encourage consumers to challenge perceived

23  false advertising and unfair business practices.

24        Jennifer Marek, Isabelle Dwight, Jennifer Gannon, Darren Williams, Evvie Eyzaguirre, the

25  named plaintiffs in the Actions, took on substantial risk, most importantly the risk of publicity

26  and notoriety. Safier Decl. ¶ 42; Sheehan Decl. ¶ 13. They also searched their personal records for

27  responsive documents and communicated many times with counsel. *Id*. They remained actively

28  involved in the Actions prior to and after settlement. *Id.* The other named Plaintiffs all provided

1   Class Counsel with sufficient information regarding their experiences and claims to enable them

2   to join this case and represent a nationwide class. *Id.* Finally, they all agreed to a broader general

3   release than the release applicable to the other Settlement Class Members. *See* Settlement Agree-

4   ment ¶ 8.2.

5          The proposed Incentive Awards are reasonable in light of the Plaintiffs' efforts in litigating

6   the Actions and the relief to the Settlement Class resulting from this Settlement. *See* Theodore Ei-

7   senberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study,

8   53 UCLA L. Rev. 1303, 1333 (2006) (an empirical study of incentive awards to class action

9   plaintiffs has determined that the average aggregate incentive award within a consumer class ac-

10  tion case is $29,055.20, and that the average individual award is $6,358.80.); *see also In re Mego*,

11  *Fin. Corp,*213 F.3d at 463 (awarding plaintiff $5,000 involving a class of 5,400 people and a total

12  recovery of $1.725 million); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, *6 (S.D. Cal.

13  Jan. 14, 2013) (finding the amount of the incentive payments requested, $15,000, is well within

14  the range awarded in similar cases); *Gibson & Co. Ins. Brokers, Inc. v. Jackson Nat. Life Ins. Co.*,

15  2008 WL 618893 (C.D. Cal. Feb. 27, 2008) (awarding $5,000 incentive fee); *Mendoza v. Hyun-*

16  *dai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 34059, at *15 (N.D. Cal. Jan 23, 2017) ("$5,000

17  is presumptively reasonable.") (citations omitted). The Court should award them.

18  **IV.     CONCLUSION**

19         For the foregoing reasons, Class Counsel asks this Court to grant this application for

20  an award of $5,000 each for Plaintiffs Marek, Dwight, Williams, Gannon, and Eyzaguirre and

21  $2,500 each for Plaintiffs Fike, Waldron, Tempest, and Nogueras; $2,500,000 in attorneys'

22  fees; and $69,298.60 in costs incurred in this Litigation to be paid by from the Settlement

23  Fund in accordance the Settlement Agreement.

24

25

26

27

28

1

Dated: April 14, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GUTRIDE SAFIER LLP**

*/s/ Hayley Reynolds                         /*
SETH A. SAFIER (State Bar No. 197427)
 MARIE A. MCCRARY (State Bar. No. 262670)
 HAYLEY A. REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Counsel for Plaintiffs*

-13-