UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MAREK, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>MOLSON COORS BEVERAGE COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-07174-WHO<br><br>**ORDER GRANTING FINAL APPROVAL AND AWARDING ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS** |

Plaintiffs Jennifer Marek, Isabelle Dwight, Darren Williams, Jennifer Gannon, Evvie Eyzaguirre, Brandi Fike, Lance Waldron, Jessica Tempest, and Vivian Nogueras ("Class Representatives") have moved the Court for final approval of a proposed class action settlement with Defendant Molson Coors Beverage Company USA LLC ("Defendant"), the terms and conditions of which are set forth in the Settlement Agreement filed with the Court on January 13, 2023 ("Settlement Agreement") (Dkt. 58-5).[1] For the reasons described more fully below, the Court GRANTS final approval of the Settlement.

## SUMMARY OF SETTLEMENT TERMS

Under the Settlement Agreement, Defendant is stipulating to a nationwide injunction permanently precluding it from using the phrase "with antioxidant vitamin C from acerola superfruit" on the Products' labels, while still permitting Defendant to include acerola cherry as an ingredient in the Product and list "acerola cherry" on the Product labeling.

The Settlement Class comprises: all persons, except Excluded Persons, who between January 1, 2020, and the date of Preliminary Approval, purchased, in the United States, any Vizzy

---

[1] Capitalized terms herein have the same meaning as set forth in the Settlement Agreement.

hard seltzer products, except for purposes of resale. The Settlement creates a fund of $9,500,000 against which Settlement Class Members have filed a claim to receive a Cash Payment for each Unit of the Products purchased between January 1, 2020 and March 10, 2023. Those who filed a timely Valid Claim will receive a Cash Payment of up to: (i) five dollars ($5) per 24-pack Unit of the Product purchased, (ii) three dollars ($3.00) per 12-pack Unit of the Product purchased, and (iii) seventy-five cents ($0.75) for each Single Can Unit of the Product purchased. There is a fifteen dollar ($15.00) cap on recovery for claims submitted without valid Proof of Purchase. The Minimum Payment for any Valid Claim is $6.00. The Cash Payment may be reduced on a pro-rata basis if, after accounting for all other expenses deducted from the Settlement Fund (e.g., Attorneys' Fees and Expenses, Incentive Awards, and notice and administration costs), there are insufficient funds in the Settlement Fund to pay all Cash Payments on Valid Claims.

## NOTICE AND SETTLEMENT ADMINISTRATION

The Settlement Agreement is being administered by Angeion Group. Following the Court's preliminary approval and conditional certification of the nationwide settlement, Angeion established a settlement website (the "Settlement Website") at http://www.vizzysettlement.com, which contained the Long-Form Notice (explaining the procedures for Class Members to submit Claims or exclude themselves), a contact information page that includes address and telephone numbers for the Settlement Administrator and the parties, the Settlement Agreement, this signed Preliminary Approval Order, online and printable versions of the Claim Form and the opt out forms, answers to frequently asked questions, and the motion papers filed in connection with the Settlement and Plaintiffs' application for Attorneys' Fees and Expenses and Incentive Awards. The published notices pointed to, and all the online notices hyperlinked to, the Settlement Website. The Claim Administrator also operated a toll-free number for class member inquiries.

Notice was published in multiple media, all of which referred class members to the settlement website. Reply Weisbrot Decl. ¶¶ 5-9. Advertisements were published in the print version of *People* magazine and the print version of *USA Today* (California Regional edition) beginning March 30, 2023 and continuing for four consecutive weeks. *Id.* ¶¶ 8-9. These publications have circulations of approximately 3,431,878 and 13,121, respectively. *Id.* People

1 magazine has a total readership of the print editions of approximately 25.1 million. Published
2 notice was also issued as a press release through GlobeNewswire (or a similar press release
3 distribution service). *Id.* ¶ 10.

4 Online Notice comprised of internet banner notice and social media notices that were
5 displayed on a variety of websites (both mobile and desktop) targeted at likely members of the
6 Settlement Class. *Id*. ¶ 5. This Online Notice was displayed on internet sites through an
7 appropriate programmatic network, social media, and a paid search campaign. *Id*. ¶¶ 5-6.

8 Additional notice was provided via sponsored listings on two leading class action
9 settlement websites (www.topclassactions.com and www.classaction.org), postings by a social
10 media influencer, and active listening on Facebook, Instagram and Twitter. *Id*. ¶¶ 11-15.

11 In total, the notice program is estimated to have delivered an 82.41% reach with an average
12 frequency of 3.62 times each. *Id*. ¶ 20.

### A. JURISDICTION

14 This court has jurisdiction under 28 U.S.C. § 1332(d)(2).

### B. CERTIFICATION OF SETTLEMENT CLASS

16 The Court finds that the prerequisites of Rule 23 of the Federal Rules of Civil Procedure
17 have been satisfied for certification of the Settlement Class for settlement purposes because:
18 Settlement Class Members are so numerous that joinder of all members is impracticable; there are
19 questions of law and fact common to the Settlement Class; the claims and defenses of the Class
20 Representatives are typical of the claims and defenses of the Settlement Class they represent; the
21 Class Representatives have fairly and adequately protected the interests of the Settlement Class
22 with regard to the claims of the Settlement Class they represent; common questions of law and
23 fact predominate over questions affecting only individual Settlement Class Members, rendering
24 the Settlement Class sufficiently cohesive to warrant a class settlement; and the certification of the
25 Settlement Class is superior to individual litigation and/or settlement as a method for the fair and
26 efficient resolution of this matter. The Court additionally finds, for the reasons set forth in
27 Plaintiff's Motion for Approval of Class Settlement, that despite any differences among the laws
28 of the various states, common issues of law and fact predominate, making certification of a

nationwide class appropriate. In particular, the identical challenged marketing and labeling was provided to all class members; the various states require similar elements of proof with respect to the asserted claims in the Second Amended Complaint and common issues under those laws predominate; to the extent there are differences among the states, Plaintiffs have demonstrated that similarly situated states can be combined into subclasses and there exist named Plaintiffs in the Second Amended Complaint who can represent each such subclass.

For purposes of the settlement and this Final Approval Order and Judgment, the Court hereby finally certifies the following Settlement Class: All persons, other than Excluded Persons, who between January 1, 2020 and March 10, 2023, purchased, in the United States, any Vizzy hard seltzer products, except for purpose of resale. "Excluded Persons" from the Settlement Classes are: (1) the Honorable Judge William Orrick, the Honorable Iain D. Johnston, the Honorable Lisa Jensen, the Honorable William P. Dimitrouleas, the Honorable Jay Gandhi (Ret.), and any member of their immediate families; (2) any government entity; (3) Defendant; (4) any entity in which Defendant has a controlling interest; (5) any of Defendant's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns; and (6) any persons who timely opted out of the Settlement Class.

For the purpose of this settlement, the Court hereby finally certifies Plaintiffs Jennifer Marek, Isabelle Dwight, Darren Williams, Jennifer Gannon, Evvie Eyzaguirre, Brandi Fike, Lance Waldron, Jessica Tempest, and Vivian Nogueras as Class Representatives and designates the law firm of Gutride Safier LLP, as Settlement Class Counsel.

**C.     NOTICE AND CLAIMS ADMINISTRATION**

The Court reaffirms the finding it made in the order granting preliminary approval that the published notice plan provided the best practicable notice to the members of the Class and satisfied the requirements of due process. The Court also finds, based on the evidence described above, that the notice plan reached at least 82.14% of the target audience an estimated average of at least 3.62 times each. Reply Weisbrot Decl. ¶ 20.

**D.     FINAL APPROVAL OF SETTLEMENT AGREEMENT**

The Court finds that the proposed settlement is fair and appropriate under the Rule 23(e)(2)

factors. Plaintiffs' claims are based on the claim "with antioxidant vitamin C from acerola superfruit" on the front label and packaging of the Products. There would be a battle of the experts regarding consumer understanding, materiality of the representation and the computation of damages, if any. Proceeding to trial would have been costly; recovery was not guaranteed; and there was the possibility of protracted appeals. The settlement was reached only after extensive litigation including contested motions to dismiss, multiple depositions, production and review of documents, and responses to interrogatories. Counsel for both parties were experienced; Plaintiffs' counsel provided detailed declarations explaining why they supported the settlement, and there is no allegation of collusion or self-dealing.

### 1. Class Representatives and Class Counsel Have Adequately Represented the Class.

In the Preliminary Approval Order, I found that the Class Representatives and Class Counsel adequately represented the interests of the Class. I have seen no evidence to contradict my previous finding, and reconfirm it here.

### 2. The Settlement Was Negotiated at Arm's Length.

This Court finds that the Settlement is the product of serious, non-collusive, arms' length negotiations by experienced counsel with the assistance of a well-respected and experienced mediator Honorable Jay Gandhi (Ret'd). of JAMS.  Further, before agreeing upon the terms of the settlement, the parties engaged in factual investigation, which included depositions, document production, and interrogatories. The record was sufficiently developed that the parties were fully informed as to the viability of the claims and able to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

The Court has reviewed the record for any signs of collusion and self-dealing, and finds no suggestion of collusion or self-dealing.

### 3. The Relief to the Class is Adequate Recovery to the Class.

#### a. Injunctive Relief

The Settlement requires Defendant to permanently change its labeling practices and precludes it from using the phrase "with antioxidant vitamin C from acerola superfruit" in any

Labeling, Primary Packaging, or Secondary Packaging of any Product. Defendant shall be permitted, at its option, to include acerola cherry on the Ingredient Statement on the Product, to call out "acerola cherry" on front of the Product Label, and to list Vitamin C in compliance with FDA requirements on the Nutrition Facts panel.

The Settlement's inclusion of injunctive relief is considered as a class benefit even though the injunction benefits not just class members, but the general public.

### b. Monetary Recovery

Defendant also agreed to create a settlement fund of $9,500,000 against which Settlement Class Members may file a Claim to receive a Cash Payment of up to the following: five dollars ($5) per 24-pack Unit of the Product purchased; three dollars ($3.00) per 12-pack Unit of the Product purchased; and seventy-five cents ($0.75) per Single Can Unit of the Product purchased for personal use. All claimants that submit a Valid Claim are entitled to a Minimum Cash Payment of $6.00. However, the actual Cash Payment received may be reduced pro rata depending on the number of Valid Claims and the cost of other expenses paid out of the Settlement Fund. If a Class member does not provide Proof of Purchase, the claimant can claim a maximum Cash Payment of $15.00 per Household. After distributions of Cash Payments, Notice and Administration Expenses, Attorneys' Fees and Expenses, and Incentive Awards, any money remains, that shall be paid to a *cy pres* recipient, National Advertising Division.

Based on the record evidence and argument the parties submitted in connection with the Settlement, as well as the familiarity the Court has developed with this case, the Court finds that this monetary recovery is fair, reasonable and adequate, particularly given the overall claimed actual damages amount, risks of proceeding to trial, and the amount made available to claimants.

### 4. The Strength and Weakness of Plaintiffs' Case and Risk of Continuing Litigation.

Plaintiffs faced serious risk at a trial. Both class certification and trial likely would have required expert analysis to establish, among other things, that the "with antioxidant vitamin C from acerola superfruit" claim was misleading, material to consumer purchasing decisions, and caused a price premium paid by consumers. Each of these expert methodologies was subject to

criticism of cross-examination and could have been discounted by the jury.

### 5. Effectiveness of Distribution Method.

The distribution method and claims process is reasonable. Class Members who seek benefits under the Settlement were required only to submit a relatively simple claim form with basic questions about class membership.

### 6. The Terms of the Proposed Award of Attorneys' Fees.

The Court finds an award of attorneys' fees, as detailed below, is reasonable.

### 7. Other Agreements.

The Parties have attested, and the Court finds, that there are no other agreements relevant to the Settlement.

### 8. The Proposal Treats Class Members Equitably Relative to Each Other.

All Class Members who submit a Valid Claim are entitled to the same relief under the Settlement. This proposal is fair and equitable.  Even though the Products may have been sold at different prices based on retail location, the uniform relief makes it unnecessary for claimants to testify how much they paid for each purchase and makes the settlement administratively efficient. The Incentive Awards for the Plaintiffs, as modified, are appropriate as discussed below.

### 9. The Response of Class Members.

Out of an estimated millions of class members, there were 118 opt-outs and no objections. The opt-outs are identified at Dkt. No. 70-1, Ex. I.  There were 587,529 potentially Valid Claims, according to the report of the Settlement Administrator.  This is a very positive response.

### 10. Costs of Administering the Settlement.

The Claim Administrator has submitted an explanation for its expenses incurred to date and expected to be incurred through the completion of its work, in the amount of $1,055,732.22. Included in this estimate is the amount for all taxes due from the Settlement Fund. The Court finds that such amounts are high but likely reasonable and payment of verified invoices from for Claims Administration expenses from the Settlement Fund is authorized.  Details regarding the final expenses will be required in the post-distribution accounting discussed below.

### E. ATTORNEYS' FEES

Considering the work to date, counsel's lodestar and cross-check, the benefit of the Settlement, I authorize an award of attorney's fees of 25% of the settlement fund.

### F. LITIGATION COSTS

Class counsel are awarded $66,785.54 in litigation costs, as documented by counsel. Reply Safier Decl. ¶ 7.

### G. CLASS REPRESENTATIVE INCENTIVE AWARDS

Having considered the nature of the claims, the short duration of this litigation, the nature of the release for Class Representatives, and most importantly weighing the varying contributions each named Class Representative made to the litigation and settlement, I award the following incentive awards: $5,000 each to Gannon and Williams (who were deposed and provided discovery responses), $2500 each to Marek and Dwight (who provided discovery responses only), and $1500 each to Eyzaguirre, Fike, Waldron, Tempest, and Nogueras (who were not deposed and did not apparently provide discovery or otherwise significantly contribute to the litigation or settlement). *See* Dkt. No. 76.

### H. CY PRES AWARD

If after payment of the Cash Payments, Notice and Administration Expenses, Attorneys' Fees and Expenses, and Incentive Awards, money remains in the Settlement Fund, that remainder shall be paid to the National Advertising Division ("NAD"), an organization that monitors national advertising in media for goods and services, enforces standards of truth and accuracy, and accepts complaints from consumers.

### I. COMPLIANCE WITH CLASS ACTION FAIRNESS ACT

The record establishes that counsel served the required notices under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, with the documentation required by 28 U.S.C. § 1715(b)(1-8).

### J. PERMAMENT INJUNCTION

Pursuant to the terms of the Settlement Agreement, Defendant shall be enjoined Defendant from using the phrase "with antioxidant vitamin C from acerola superfruit" in any Labeling,

8

Primary Packaging, or Secondary Packaging of any Product, which injunction shall become binding and enforceable against Defendant on the Effective Date. Defendant shall be permitted, at its option, to include acerola cherry on the Ingredient Statement on the Product, to call out "acerola cherry" on front of the Product Label, and to list Vitamin C in compliance with FDA requirements on the Nutrition Facts panel.

Because this is a nationally-distributed and sold set of Products by retailers across California and other states, Defendant needs a reasonable time for transition. Accordingly, this injunction hereby expressly allows Defendant and its packaging suppliers, bottlers, distributors, wholesalers and retailers of the Products to sell-through all existing stock using the current Primary Labeling and Secondary Labeling and introduce the new Primary Labeling and Secondary Labeling as they sell through existing stock. The sell-through shall not require the withdrawal or destruction of any existing Labeling or recall of Product.

Defendant's transition to new Labeling shall be completed no later than sixty (60) days after the Effective Date.

Nothing in this section shall be interpreted to interfere with Defendant's obligations to comply with all applicable state and federal laws.

**K.     RELEASES; EFFECT OF THIS ORDER**

By operation of this Order and Judgment, upon the Effective Date, Class Representatives and Settlement Class Members, including any Person claiming derivative rights of the Class Representatives and Settlement Class Member as such person's parent, child, heir, guardian, associate, co-owner, attorney, agent, administrator, executor, devisee, predecessor, successor, assignee, assigns, representative of any kind, shareholder, partner, director, employee or affiliate, shall have unconditionally, completely, and irrevocably released and discharged the Released Parties from the Released Claims, as defined in the Settlement Agreement.

**L.     OTHER EFFECTS OF THIS ORDER**

No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with the Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment

1    or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any
2    other Party. Neither the Settlement Agreement nor any act performed or document executed
3    pursuant to or in furtherance of the settlement: (a) is or may be deemed to be or may be used as an
4    admission of, or evidence of, the validity of any claim made by the Settlement Class Members or
5    Class Counsel, or of any wrongdoing or liability of the persons or entities released under this
6    Order and Judgment and the Settlement Agreement, or (b) is or may be deemed to be, or may be
7    used as an admission of, or evidence of, any fault or omission of any of the persons or entities
8    released under this Order and Judgment and the Settlement Agreement, in any proceeding in any
9    court, administrative agency, or other tribunal. Defendant's agreement not to oppose the entry of
10   this Order and Judgment shall not be construed as an admission or concession by Defendant that
11   class certification was appropriate in the Litigation or would be appropriate in any other action.

12   Except as provided in this Order, Plaintiffs shall take nothing against Defendant by their
13   Complaint. This order shall constitute a final judgment binding the Parties and Class Members
14   with respect to this Litigation.

15   The Litigation is hereby dismissed on the merits and with prejudice and final judgment shall
16   be entered thereon, as set forth in this Order.

17   Without affecting the finality of the judgment hereby entered, the Court reserves jurisdiction
18   over the implementation of the Settlement Agreement. In the event the Effective Date does not
19   occur in accordance with the terms of the Settlement Agreement, then this Order and any
20   judgment entered thereon shall be rendered null and void and shall be vacated, and in such event,
21   all orders and judgments entered and releases delivered in connection herewith shall be null and
22   void and the Parties shall be returned to their respective positions *ex ante*.

23   Without further order of the Court, the parties may agree to reasonable extensions of time to
24   carry out any provisions of the Settlement Agreement.

25   **M.   POST-ACCOUNTING DISTRIBUTION**

26   Class counsel shall file a post-distribution accounting within 21 days after the distribution
27   of settlement funds. In addition to the information contained in the Northern District of
28   California's Procedural Guidance for Class Action Settlements, available at

https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-distribution accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  The Claims Administrator shall also provide a supplemental declaration describing in detail the distributions made to the class, including the number of mailed checks or electronic disbursements made, and further addressing the tasks performed and costs actually incurred in their administation and disbursement efforts to justify their request for Claims Administration costs in excess of $1,000,000.

The Court orders the Claims Administrator to withhold 10% of the attorney's fees granted in this order until the post-distribution accounting has been filed.  Class counsel shall file a proposed order directing the Claims Administrator to release the remainder of the fees when they file their post-distribution accounting.

This matter is set for a further Case Management Conference on February 13, 2024, with a Case Management Statement due on February 6, 2024.  The parties may request that the Case Management Conference be continued if additional time is needed to complete the distribution.  The conference will be vacated if the post-distribution accounting has been filed and the Court has released the remaining attorney's fees.

**IT IS SO ORDERED.**

Dated: August 15, 2023

William H. Orrick
United States District Judge